### JOHN JENNINGS v. PHINEAS DE CORDOVA.

Quere, as to the effect of a valid survey for the very colonist, made before the closing of the land offices in 1835, where the final title was void because made subsequent to the closing of the land offices.

As said in the case of Cravens v. Brooke, (17 Tex. R. 274,) the only condition imposed by law to secure a pre-emption is that of settlement and improvement on vacant land; whether the settler supposed it vacant or otherwise, and entered without title or upon a claim of title supposed by him to be valid.

Had the appellant, within eight months after his settlement, discovered his mistake as to the validity of Owens' title, (under which he entered,) and then claimed to have a survey on the land as a pre-emptionist, his claim would have been valid against all locations made after his settlement, whether these locations were made before or after the appellant knew the land was vacant.

And if a settler should remain silent for years, he might at any time, no matter how long after the expiration of the eight months, claim the benefit of pre-emption, provided a location had not intervened and been so perfected as to exclude any opposing right or equity to the land.

We are inclined to the opinion that the proof was sufficient to establish the fact of location (by appellee) in December, 1853, provided such location could have been received or entered by the surveyor without possession of the certificate, for there is no proof that the certificate was on file prior to August, 1854. If the entry was not valid without the possession of the certificate—and this is certainly the policy, if not the express letter, of the law—the question would, without further difficulty, be settled in favor of the claim of the appellant, as his claim would then have priority in time. But admitting that appellee's location was prior, &c.

But admitting that the location was prior to the application for pre-emption, and waiving the argument that the provision with respect to the survey of pre-emptions within eight months is directory, and that such claim is not forfeited by failure to make the survey within the time prescribed, we will proceed to consider the effect of the Act of the 16th of August, 1856, (Acts, p. 39,) which by its second Section declares that all pre-emptionists who failed to have their land surveyed within eight months after their settlement, shall have eight months further time to do so.

The effect of the Act of August 16th, 1856, (Acts, p. 39,) which did not save the rights of third persons, was to revive the dormant equities of all pre-emption claims, under all the pre-emption laws from 1845 to the last on the statute book, where the fee had not already passed out of the Government by the issue of a patent to a third person; and to give such claimants eight months within

which to make their surveys; and to give priority to their surveys, where they had already been made, although made more than eight months after settlement, and after a location on the land by a third person, after the expiration of the eight months.

Where pre-emptionists had been required to have their claims surveyed within eight months after settlement, and a law was passed giving them eight months from the passage of the law, it was held that surveys made after the eight months from settlement, and before the passage of the law, were ratified by the law, and that resurveys were not necessary.

Appeal from Burnett. Tried below before the Hon. Thomas H. DuVal.

Action of trespass to try title to a league of land, by appellee against appellant and six others, brought to Spring Term, 1856. Appellant disclaimed as to all except seven hundred and seventeen acres specially described, to which he claimed title under David F. Owens, to whom he alleged the league was granted by the Government in the early part of the year 1835. And for further answer defendant says he is informed that said plaintiff alleges that the aforesaid grant to Owens was and is void; and this defendant says, if it is true, which is denied, then that the survey of said league of land, made for said David F. Owens, as a colonist of the late Republic of Texas, was lawfully made, at a time when there was no law prohibiting said survey, by reason of which this defendant avers that said Owens obtained a valid legal and equitable title to said land from the Government of the Republic of Texas, and that the field-notes of said survey were returned to the General Land Office within the time prescribed by law.

Defendant's answer then set up a pre-emption claim to 320 acres in case it should be held that the title of Owens was void. Defendant also denied that plaintiff had any title to the land for which he took defence. There was also a suggestion of improvements in good faith.

At the trial the plaintiff gave in evidence a copy of a letter from J. & P. De Cordova to the District Surveyor of Milam county, without date, requesting an entry of the league of land now in controversy, by virtue of a duplicate certificate to John Stephenson, described by its number and date ; certified on the 11th of August, 1854, by the District Surveyor of Milam Land District, to be a true copy of the original on file in his office. Then followed a certificate, of same date, by the District Sur-

veyor, that the certificate of John Stephenson, as above named, is on file in my office, with file of same. The foregoing copy and certificate was on a half sheet of paper, on the back of which was indorsed, "Received on file December 6th, 1853. Wm. Armstrong, D. S. M. D." Same surveyor who gave the copy. Plaintiff then gave in evidence a certified copy from the General Land Office of the John Stephenson duplicate certificate for a league of land, and proved the transfer thereof to himself. Plaintiff also proved, by a son of Jennings, that the latter went on the land in the fall of 1851, under deed from one Casner, and had been there ever since. Here plaintiff rested.

The defendant read in evidence, for the purpose of laying a predicate for possession in good faith, (in the language of the statement of facts,) a translated copy of the original grant from the Government of Coahuila and Texas, issued by William H. Steel, Commissioner of Robertson's colony, to David F. Owens, for the same league of land covered by plaintiff's location, dated 28th December, 1835; plaintiff admitting that the survey was made for Owens in the spring or summer of 1835. Defendant then proved a chain of title by mesne conveyances from David F. Owens to 718 acres of land to E. E. Casner, and a deed therefor from Casner to himself, dated May 27th, 1852, duly recorded. Defendant then proved his application for pre-emption survey of 320 acres, including his improvements, on the 24th of February, 1854, and a survey thereof on the 3d of March, 1854. Defendant then proved that seventy-seven acres of the pre-emption field-notes were on the Owens league, the value of his improvements, and the value of the land. There was no question as to the fact that the plaintiff had used due diligence to get his survey made and returned. A great many instructions were given and refused, but, in the view taken of the case by this Court, they are not now important. There were also bills of exception to the admission and exclusion of testimony. The jury found for the plaintiff, but that the defendant settled in good faith, and was entitled to the value of his improvements, assessed at $540; and valued the 718 acres at $1 75 without the improvements. Judgment accordingly. Motion for new trial by both parties overruled, and appeal and cross-appeal.

*Hamilton, Chandler & Co.*, for appellant. I. The survey for Owens was made in the summer of 1835. We submit the ques-

tion whether or not, under the provision of the 10th Section of the General Provisions of the Constitution of the Republic, which declares valid all orders of survey legally obtained by any citizen of the Republic, before the closing of the land offices, the land was subject to location by the plaintiff at all. If it was, then we insist that the land was public domain, and the proof shows that defendant settled upon the land, made improvements upon it, and had it surveyed under his pre-emption claim, before the plaintiff's certificate was filed for location.

II. We insist, under the 1st Section of the Act of 1845, that when a party has settled upon and improved a portion of the public domain that has not been filed upon, entered, located or surveyed, that these 320 acres, including such settlement and improvement, are exempt from location; and the 6th Section of the Act of 1845, requiring the pre-emptor to make the affidavit and have the land surveyed within eight months from the date of his entry upon the land, is directory only, and simply one of the stipulations of the contract between the settler and the Government, and it matters not so far as the rights of third parties are concerned, whether the affidavit and survey is made within the time or not; there is no provision in the law that forfeits or affects his rights as a pre-emptionist, neither does it give a third party a right to locate the land.

*I. A. & G. W. Paschal* and *Hancock & West,* for appellee. The decision of the Court, upon the instructions asked and given, in relation to the pre-emption claim, present the question as to the superiority of equity between the pre-emptor and the locator. To understand this question correctly, the facts before the Court must be looked to.

They were, that Jennings purchased under the Owens grant, and entered and remained some two years, during all which time he made no declaration for a pre-emption. On the 6th day of December, 1853, the plaintiff made his entry.

The defendant being thus awakened to the fact that he had no title, undertook to make one, by claiming a pre-emption ; and now he seeks to couple his possession under a void title, with the pre-emption right, and thus to overreach a location which was upon vacant and unappropriated public domain, when it was made.

A short review of the pre-emption laws, will show the correctness of the District Judge's decision upon this point. The Judge

proceeded upon the notion, that if the defendant entered under the Owens grant, and remained until after the location by the plaintiff, that the plaintiff's entry appropriated the land, and there was no longer vacant land to claim, as a pre-emption.

The first Act upon the subject of pre-emptions, only authorizes pre-emptions upon the vacant public domain, (§ 1.) And to obtain a pre-emption, the land had to be covered with a certificate within three years. (Act of 22d January, 1845; Hart. Dig. Art. 2130, 2131.)

The amendatory Act, of 11th February, 1852, (Acts of that year, Chap. 75,) only extends retrospectively to those who had had their land surveyed—a provision which does not reach the plaintiff.

The supplementary Act of the 7th January, 1856, (Acts of that Session, Chap. 8,) only declares that the Act of the 10th February, 1852, shall not be " so construed as to embrace the field-notes of surveys made prior to the 1st of January, 1851, of a pre-emption claimant, in view of the Act of 1st January, 1845."

So that as against the plaintiff's entry in December, 1853, the defendant's pre-emption declaration of March, 1854, was of no validity, whatever. And so far as the equity growing out of intention goes, the law will hold him to the entry under his void title. (See Walters v. Wells, 7 Tex. R. 202.) And see particularly Watkins v. Kirchain, 10 Id. 375. This latter case shows, that if the defendant relies upon the Owens survey in 1835, the land was not the subject of pre-emption; and that if the land was vacant, De Cordova's location was valid, and the pre-emption right was lost. (See Bledsoe v. Cain, 10 Id. 455.)

This brings us to the grounds of the plaintiff's appeal.

HEMPHILL, CH. J. There is no doubt but that the title for the league, issued to David F. Owens on the 28th December, 1835, was absolutely void, the same having issued after the closing of the Land Office by the Act of the Consultation, and that so far as that title was concerned, the land was open to location or pre-emption and survey. But the survey upon which that title issued (having been made for Owens in the summer of 1835) was not avoided by the Act of Consultation, and there might be some question whether it be not still valid, and capable of being perfected into a patent.

Jennings v. De Cordova.

Surveys made for colonists prior to the closing of the Land Offices, in 1835, are exempt from the provisions of the Act of February 10th, 1852, requiring surveys to be returned to the General Land Office on or before the 31st August, 1853; at least the fourth Section of the Act will admit of such construction. (Acts of 1852, p. 58.) And if the want of return were the only objection, the force of this survey might not be much affected.

But it might be contended that Owens, for whom the survey was made, was one of the class that under the law had six months' preference in the selection and location of their lands, and that having neglected to procure a certificate of headright from a Board of Land Commissioners, and apply it to the survey within the six months, his preference right was forfeited, and the land was afterwards open to general location and survey. (Hart. Dig. Art. 1856.) There is much force in this view. But as the point of the validity of the survey, though suggested in the pleadings of the appellant, and in the brief of his counsel before this Court, was not noticed in the trial below, was not the subject of instructions to the jury, and none were asked in this particular by the appellant, we will decline the expression of an opinion until this point, which is of considerable importance, shall be discussed in argument or shall be further considered.

A leading question in the case is with respect to the validity of the pre-emption claim of the appellant.

If it be admitted, as seems to be conceded by the parties, that from the nullity of the deed to Owens the land was vacant, it follows that the settlement and improvement by the appellant in 1851, gave him in law a claim to pre-emption. The fact that he was holding under title derived from Owens is immaterial. As said in the case of Cravens v. Brooke, 17 Tex. 274, the only condition imposed by law to secure a pre-emption, is that of settlement and improvement on vacant land. The acts of the applicant are alone the subject of inquiry. Was the land vacant, and has it been settled and improved? and not what the settler thought or imagined about the title; or whether he supposed it vacant or otherwise. Had the appellant, within eight months after his settlement, discovered his mistake as to the validity of Owens' title and then claimed to have a survey on the land, as a pre-emptionist; his claim would have been valid against all locations made after his settlement, whether these locations were

33

made before or after the appellant knew the land was vacant. (Ib.)

And if a settler should remain silent for years, he might, at any time, no matter how long after the expiration of the eight months, claim the benefit of pre-emption, provided a location had not intervened and been so perfected as to exclude any opposing right or equity to the land.

The appellee insists that he made his location on the land in December, 1853, two years or more after the settlement by the appellant, but prior to his application for a pre-emption survey. The appellant urges that his application for pre-emption was in February, 1854, and that the appellee has not, by his proof, shown a file prior to August, 1854, and that consequently his pre-emption claim had priority in date. We are inclined to the opinion that the proof was sufficient to establish the fact of location in December, 1853, provided such location could have been received or entered by the surveyor without possession of the certificate, for there is no proof that the certificate was on file prior to August, 1854. If the entry was not valid without the possession of the certificate—and this is certainly the policy, if not the express letter of the law—the question would, without further difficulty, be settled in favor of the claim of the appellant, as his claim would then have priority in time. But admitting that the location was prior to the application for pre-emption, and waiving the argument that the provision with respect to the survey of pre-emptions within eight months, is directory, and that such claim is not forfeited by failure to make the survey within the time prescribed, we will proceed to consider the effect of the Act of the 16th August, 1856, (Acts, p. 39,) which by its second Section declares, that all pre-emptionists who failed to have their land surveyed within eight months after their settlement, shall have eight months further time to do so. This extends to all the pre-emption laws from 1845 to the last on the statute book, and gives all settlers entitled to the benefit of any of these laws, eight months more to make their survey. No exception is made in favor of the rights of third parties which may in the mean time have intervened, nor was it the policy of the statute to make any such exception. The pre-emption claim is in effect recognized as a dormant equity, as one which had been a valid right to the land, but which from delay had lost its force; which was not extinguished, but by indulgence on the part of the grantor, could be restored to pristine life and vigor; and which,

Jennings v. De Cordova.

as long as the Government retained the fee in the land, might be consummated into a perfect title. If in the mean time and before the passage of this Act, the land had been located, surveyed and patented by another, the pre-emptionist would have lost all claim, and the statute could afford him no relief. But if the patent to the opposing claim had not issued prior to the statute, the original right of the pre-emptionist would be revived in all its force, and effectually preclude further action, and defeat the right under the location. (Warren v. Shuman, 5 Tex. R. 441; 11 Id. 564; 14 Id. 213; 8 Howard, 345; 3 Id. 55.)

Under this view of the effect of the law of 1856, there can be no doubt that if the appellant had made a survey within eight months after the passage of the Act of 1856, it would have been as effectual as if made within eight months after his original settlement. Is not the survey made for him before the statute as effectual as if it had been made within eight months after its passage? We conceive that the necessary effect and operation of the Act is to make valid all surveys of pre-emption claims, which may have been made after the lapse of eight months from the date of settlement and improvement, but which were antecedent to the day on which the eight months after the passage of the statute would expire, no matter whether made before or after the Act was passed. The survey of appellant, though it may have been and was after the lapse of the first eight months, yet it was prior to the end of the time of extension under the statute, and was consequently as valid as if made within the first eight months, and before the location of the appellee.

There certainly was no necessity nor is there any reason why the pre-emption, if surveyed by a legally authorized surveyor, should be re-surveyed after the passage of the statute. The object of the provision was that the land should be legally surveyed, and the claimant was allowed time for that purpose; but if he in the mean time had caused the survey to be made, there would be no propriety in forcing him to the increased expense of having his lines run over the second time.

We are of opinion that the survey of appellant on his pre-emption claim was (if not valid before) made valid and effectual under the Act of August, 1856, and that this being a general law of which we are bound to take notice, the judgment cannot be affirmed. It is therefore reversed, and cause remanded.

Reversed and remanded.