### EDWARD GARDNER V. MOLLIE BURKHART ET AL.

### No. 54.

1. **Separate Estate — Case in Judgment.** — Gardner, an adult single man, entered upon and improved 160 acres of land, and while in actual possession made application therefor under the homestead laws of this State on March 3, 1868. The land was surveyed and the field notes returned to the General Land Office in 1869. With his brother, he lived upon and cultivated the land in 1868, 1869, and 1870, and in the last named year divided the land, giving his brother the west half, retaining the east half, and continuing to live in the house through which the dividing line ran, and to cultivate the east half. On March 15, 1871, Gardner married a widow with an infant daughter (appellee). On July 12, 1871, as the head of a family, he made another application for the survey of the east tract of 80 acres, together with 55 acres more adjoining it on the east. This tract of 135 acres was surveyed for him October 25, 1872. His wife died December 31, 1872. On May 10, 1876, patent was issued to him for the 135 acres, and he has ever since occupied the same as a home. *Held,* the original 80 acres located and improved by Gardner, being all the land in controversy, was his separate estate; the mother of appellee had no community interest therein, and no interest passed to her daughter, appellee.

2. **Constitution of 1869—Acts of 1866 and 1871.**—Under the Constitution of 1869, a single person 21 years of age was given 80 acres; but Gardner's settlement and entry having been made March 3, 1868, his land surveyed, and field notes returned to the General Land Office, the Constitution did not propose to take away his rights. Acts of November 12, 1866, and March 24, 1871, cited.

3. **Abandonment of Survey.**—Filing the application as the head of a family for the tract of 55 acres, with his original 80 acres, did not constitute an abandonment of his original claim to the 80 acres, so as to destroy his separate right thereto. Authorities cited.

APPEAL from Hopkins.    Tried below before Hon. E. W. TERHUNE.

*J. A. B. Putman,* for appellant.—1. Applicant's application for a survey of 160 acres of land as a homestead, and the survey made thereunder,

were not void, either on the ground that he was only entitled to 80 acres, or on the ground that he did not have survey made and field notes returned within twelve months.  Gen. Laws, 11th Leg., p. 103; Thornton v. Murray, 50 Texas, 162; Vance v. Lindsey, 60 Texas, 286; Act of March 24, 1871.

2. The abandonment or giving to another by pre-emptioner of a part of his survey, after a return of field notes, is not an abandonment of the portion still claimed and occupied by him.  Thornton v. Murray, 50 Texas, 161.

3. Where a pre-emptioner has made a valid settlement and survey, and continues to occupy the same, he does not abandon his former survey, or lose his rights thereunder, by having it resurveyed so as to include additional land.

4. Where a single man has made a homestead settlement, has survey made, and field notes returned to the General Land Office, and has continued to reside upon the land for more than three years, and after the expiration of more than three years marries, his wife has no community interest in the land so occupied by him before marriage.  Webb v. Webb, 15 Texas, 277.

5. Where the death of the wife occurs before there has been a sufficient compliance with the conditions upon which the land was offered, to have entitled the husband or wife to demand it upon equitable principles or under terms of the law, the subsequent grant to the husband would be his separate property.   Webb v. Webb, 15 Texas, 275; McReynolds v. Bowlby, Posey's U. C., 452; Hodge v. Donald, 55 Texas, 349.

No brief on file for appellees.

LIGHTFOOT, Chief Justice.—This suit was brought by appellees, Mollie Burkhart and husband, to recover an interest in 160 acres of land which she claims by inheritance from her deceased mother, and to cancel certain patents.  There was a judgment for plaintiffs below for three-eighths of 80 acres, subject to the homestead claim of appellant, Edward Gardner, from which he has appealed.

There is no brief or appearance filed by appellees, and under rule 40, we are inclined to regard the brief of appellant as a proper presentation of the case.

The following assignments of error will be sufficient to present the views we take of the case:

" 2.  The court erred in his second conclusion of law, in holding that the application for a homestead survey by defendant on March 3, 1868, and the survey made thereunder April 13, 1869, were void, and that the same were abandoned by him in 1870, as said finding is not warranted by the facts as found by the court.

"3. The court erred in his third conclusion of law, in finding that on the 15th day of March, 1871, defendant had made no effort to appropriate the land in controversy, and that the first effort made by him to appropriate it was on July 12, 1871, as the same is contradicted by the facts as found by the court.

"6. The court further erred in his conclusion of law, in holding that the east 80 acres of land in controversy was community property between defendant and his first wife."

The facts were substantially as follows: Ed. Gardner (appellant), who was an adult single white man, entered upon the 160 acres of land in controversy and made application therefor under the homestead laws of the State, on March 3, 1868. At the time of such application, Ed. Gardner and his brother, John, who was also a single man, were in actual possession, built a dwelling house in the center of the tract, and enclosed and put into cultivation land on each side of the house; and in 1869 the land was surveyed by Ed. Gardner and the field notes returned to the General Land Office. The two brothers lived upon and cultivated the land in 1868, 1869, and 1870, and in the last named year divided it into two 80 acres tracts by running a line through the house, John taking the west 80 acres, and Ed. the east, each continuing to live in the house, and to cultivate and claim his respective tract. On March 15, 1871, Ed. Gardner married a widow, who had at the time of such marriage an infant daughter, Mollie (appellee), who lived on the place with her mother and step-father until her mother died, December 31, 1872, and then continued to live on the place with her step-father, Ed. Gardner, until her marriage with Mr. Burkhart, November 2, 1887.

On July 12, 1871, Ed. Gardner, as the head of a family, made another application for the survey of the eastern 80 acres tract, together with 55 acres more adjoining it on the east. This 135 acres was surveyed for him October 25, 1872. He was married again in August, 1873. He made the requisite proof of occupancy, etc., and patent was issued for the 135 acres May 10, 1876, and he has ever since used and occupied it as a home. The west 80 acres of the original 160 acres tract was patented to John Gardner, August 23, 1876. After Ed. Gardner made his proof under the survey of the 135 acres tract, there was some mistake in the Land Office under which the patent was issued on November 18, 1874, for the original 160 acres; but this was cancelled and the patents correctly issued in 1876.

*Opinion.*—Under the facts, the first question presented for our consideration is this: Did the mother of appellee, the first wife of Ed. Gardner, have a community interest in the east 80 acres of the land in controversy? At the time of her marriage with appellant, March 15, 1871, he had resided upon the land for more than three years, cultivating, using,

and claiming it as his own under the homestead laws of the State, having filed his application therefor March 3, 1868, and it having been surveyed and the field notes returned to the General Land Office in 1869. It is true, that in 1870, the year before his marriage, he had divided the land with his brother John, and from that time on only claimed the east 80 acres; but was his claim to that affected in any manner by this division? We think not. So that his right to this 80 acres tract at the time of his marriage can not be questioned. He had up to this time done everything that the law required to secure him the land. After his marriage, desiring to secure also 55 acres more adjoining him, he filed application on July 12, 1871, as the head of a family, for the tract of 55 acres, with his original 80 acres, making 135 acres, upon which patent was afterwards issued. Did the filing of this application constitute an abandonment of his original claim to the 80 acres, so as to destroy his separate right thereto and vest the whole 135 acres in the community estate? He had continued to reside upon and claim said land, and there is no evidence of such an intention, unless the filing of the application so as to include the additional land can be construed into an abandonment of his original claim. We do not think that it can have that effect. Miller v. Moss, 65 Texas, 179; Cravens v. Brooke, 17 Texas, 274; Turner v. Ferguson, 58 Texas, 10; Jennings v. De Cordova, 20 Texas, 508; Railway v. Thompson, 65 Texas, 186; Thornton v. Murray, 50 Texas, 161; O'Neal v. Manning, 48 Texas, 403.

By the Act of November 12, 1866, it was enacted: "That all white persons, being heads of families, or 21 years of age, * * * who may hereafter settle upon and improve a portion of the vacant public domain, * * * shall have the privilege of locating and appropriating a tract of such vacant land, not to exceed 160 acres," etc. Sayles' Early Laws of Texas, art. 3376.

The appellant being 21 years of age, entered upon the original 160 acres tract under this law, and made the improvements and settlement required by the statute, and under such entry and settlement was entitled to appropriate the whole tract of land. Under the Constitution of 1869, article 10, section 8, all heads of families were given 160 acres of land, and *single persons 21 years of age*, 80 acres; but appellant's settlement and entry having been made March 3, 1868, and his land surveyed, and the field notes returned to the General Land Office, neither did this Constitution nor any subsequent legislation propose to take away his rights. On the contrary, such rights are expressly recognized and preserved, and by the Act of March 24, 1871, it is provided, that " *any person* who has occupied any portion of the public domain not exceeding 160 acres, in good faith, under any of the pre-emption laws of this State, for three years or longer, shall be entitled to the same as a homestead," etc. So that it is

clear that if the appellant had not voluntarily divided the land with his brother John in 1870, he pre-empting the west 80 acres and appellant the east 80, there would have been nothing to prevent appellant from obtaining his patent to the whole tract.    The act of division could not deprive him of the portion retained.

The 80 acres originally located and improved by Ed. Gardner being the only tract in controversy in this suit, we hold, that it was his separate estate, and that the mother of appellee Mollie Burkhart had no community interest in it, and no interest passed to appellee.

The judgment below is reversed and here rendered in favor of appellant.

*Reversed and rendered.*

Delivered October 25, 1893.