## DAVIDSON et ux. v. WOODWARD.

(Circuit Court of Appeals, Ninth Circuit. November 4, 1907.)

### No. 1,450.

HUSBAND AND WIFE—COMMUNITY PROPERTY—WASHINGTON STATUTE.

Defendant entered into a contract with one having a preferential right to purchase tide lots from the state of Washington, and who had applied for such purchase, by which the right to purchase a portion of the lots was assigned to him, and he made a payment therefor. Subsequently, the state commissioners granted the application to purchase as to certain of the lots, but denied it as to others, and in consequence the contract was abandoned. Defendant married, and shortly afterward, the amount he had paid on the contract not having been returned, a new agreement

was made, by which he was given a quitclaim deed to certain of the lots in consideration of such payment, and acquired title thereto from the state; the payments being made in part with money of his wife and in part with community funds. *Held*, that under the law of the state that land acquired after marriage by a deed expressing a money consideration is presumptively community property, and that it requires clear and convincing proof to overcome the presumption, such facts were not sufficient to establish the individual ownership of defendant, nor to support a decree for the specific performance by him of a contract for the sale of one of the lots in which his wife did not join, as required by the law of the state, to make a valid contract for a sale of community property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Husband and Wife, §§ 913, 914.

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

Hunt, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the Northern Division of the Western District of Washington.

For opinion below, see 150 Fed. 840.

William Martin, for appellants.

H. H. Field, Blaine, Tucker & Hyland, and Hughes, McMicken, Dovell & Ramsey, for appellee.

Before GILBERT, Circuit Judge, and DE HAVEN and HUNT, District Judges.

GILBERT, Circuit Judge. The appeal in this case is taken from a decree ordering the specific performance of a contract to sell land, made by the appellant James D. Davidson. One of the grounds of defense to the suit was that the land was the community property of the appellants, who are husband and wife, and could not be sold without the wife's consent. The court below found that the land was the separate property of James D. Davidson. That finding is assigned as error. The land in controversy was tide land adjoining property owned by one Wm. Laack, and which he had the preferential right to purchase from the state. The appellants intermarried on January 19, 1897. On January 27, 1897, Wm. Laack made a quitclaim deed to James D. Davidson, whereby he assigned to him the right to acquire from the state certain described lots, including the tide land which is the subject of the present controversy. On February 9, 1897, the appellants made their application to purchase said land from the state and made their first payment thereon. At the time of the marriage, Annie Davidson had about $400 of her own money, and the first payment was made out of this money. That and the subsequent payments were made under an understanding and agreement between the appellants that all the property possessed by each at the time of the marriage was to be community property. On October 6th, all the payments having been made, amounting in all to $732.73, the state of Washington conveyed to James D. Davidson the said property.

It is the general rule in the states in which community property is recognized, and the rule has been expressly affirmed in the state of Washington, that land acquired after marriage by a deed expressing a money consideration is presumptively community property, and that

it requires clear and convincing proof to overcome the presumption. Dormitzer v. German, etc., Co., 23 Wash. 132, 62 Pac. 862. It is contended that the presumption is overcome in this case, and the court below so held by reason of the fact that James D. Davidson's right was initiated and his first payment was made to Laack prior to the marriage. There is no dispute in the testimony as to the nature of the steps taken by Davidson to acquire the title, and his relation to the property before his marriage. The controversy is only as to the legal effect of the established facts. In March, 1895, Wm. Laack, claiming to have the preferential right to purchase about 24 lots of tide lands, made application to the Board of State Land Commissioners for leave to purchase the same, and soon thereafter proposed to James D. Davidson that he take some of the lots, as there were more than he (Laack) "could handle." Davidson accepted the proposition, and an agreement was executed upon which Davidson paid Laack $80. The written agreement was subsequently lost or destroyed and could not be produced in evidence. Laack, who was called as a witness for the appellee, testified that the agreement was to the effect that he (Laack) was to have the first 8 lots fronting the shore lots, and that thereafter the remaining 16 lots were to be divided equally between him and Davidson. It would appear from Laack's testimony that the agreement was not binding upon him, for he testified:

"I could give him eight and if I wanted to, and if I didn't want to give him any I should not give him any. It was my option."

In 1896 the Board of State Land Commissioners decided adversely to Laack's application as to a considerable portion of the property involved therein, and thereafter, according to the testimony of both Laack and Davidson, the agreement which they had made was canceled, and a new agreement was made on or about January 27, 1897, when Laack executed the quitclaim deed to Davidson above referred to. The testimony is that the former agreement was not canceled by any formal act of cancellation, but was by both parties thereto considered no longer in force, for the reason that the decision of the Board of State Land Commissioners, above referred to, had rendered its performance impossible. The $80 paid by Davidson to Laack was retained by the latter, and it constituted the consideration for the quitclaim deed, although that instrument recited a consideration of $1 and other good and valuable considerations. The question arises whether these facts are sufficient in law to overcome the presumption that the land is community property.

If one marries after initiating a title, it is his separate property in all cases wherein, by the doctrine of relation, the title takes effect as of the time of the first act initiating it, as in the case of a settlement under the homestead or pre-emption laws of the United States. Harris v. Harris, 71 Cal. 314, 12 Pac. 274; Forker v. Henry, 21 Wash. 235, 57 Pac. 811; Gardner v. Burkhart, 4 Tex. Civ. App. 590, 23 S. W. 709. Property purchased by a contract before marriage but not paid for until after marriage, is also separate property. Lawson v. Ripley, 17 La. 238; Medlenka v. Downing, 59 Tex. 32; Wade's Succession, 21 La. Ann. 343. In Medlenka v. Downing, land was purchased in

1853 by one whose wife died soon after the purchase. In 1854 he married again. It was held that the payment of a portion of the purchase money soon after the second marriage would raise no presumption that the money used was the community fund of the husband and his second wife. In Wade's Succession, it was held that where an unmarried woman enters into an agreement in writing before a notary public for the purpose of purchasing real property, makes a cash payment for a portion of the price, and gives her notes for the balance, due at a future date, and she marries before the maturity of the notes, the property thus acquired will, as between the husband and wife, form a portion of her separate estate.

The case principally relied on by the appellee is Barbet v. Langlois, 5 La. Ann. 212. In that case the plaintiff and Andre Langlois intermarried in the year 1818. At the time of the marriage Langlois owned and possessed a tract of land fronting on a bayou. During the marriage he purchased from the United States, by virtue of his right of preference as a front proprietor, the lands lying in the rear of his estate, which he was allowed to purchase under the act of 1811, giving to every person in Louisiana who owned a tract of land bordering on a river, creek, bayou, or water course the right to purchase the vacant land adjacent to and back of his tract to a depth of 40 arpents. It was held that, since the right of acquisition of the adjoining lands existed in Langlois prior to the marriage, the land became his separate property although paid for during the marriage. That doctrine was affirmed in Succession of Morgan, 12 La. Ann. 153, in which it was held that, where the front tract on a river belonged to the husband before the marriage, the double concession purchased by him after the marriage under the act of Congress of June 15, 1822, which was enacted after the marriage, became the property of the husband, and that the only right of the community was to claim reimbursement of the sum paid therefor if the payment was made out of the community funds. The court, following Barbet v. Langlois, said:

"That the cause of the acquisition preceded the marriage is a matter which can hardly admit of any doubt."

But in the present case it cannot be said that the cause of the acquisition preceded the marriage, or that at the time of the marriage J. D. Davidson possessed any right to purchase the property in controversy, or had any contract for the acquisition of such a right or had taken any step back to which the title related. The agreement which he made with Laack in 1896, it would seem from the evidence, created no binding obligation upon the latter. But if, indeed, it were otherwise, the result would be the same, for that agreement had been abandoned by both the parties thereto before the marriage took place, and at the time of the marriage there was no agreement in existence.

Again, it is to be observed that that agreement did not describe or mention the property which is in controversy. If it had been carried into effect, it cannot be known that any of that property could have been acquired by Davidson. It is true that the consideration

upon which the quitclaim deed from Laack to Davidson was made had been paid some time prior to the marriage, but neither that payment nor its retention by Laack up to and after the date of the marriage created any right in Davidson as to the land involved herein, or imposed any obligation upon Laack except to repay the money, and Laack testified that he would have paid it back if he had not made the new agreement. The earliest date at which, in the history of the title, Davidson possessed any right as to the land, was January 27, 1897, the date of the quitclaim deed.

A case in point is Aken v. Jefferson, 65 Tex. 137. In that case the husband had purchased certain land before the marriage. After the marriage he compromised a suit brought against him for the land by paying half of its value. The original purchase money was his separate property. The compromise money was community property. The court ruled that if the husband acquired a good title by the first purchase or by limitation, before his marriage, all the land was his separate property; but that if he did not have title at the time of his marriage, it was all community property. In Johnson v. Johnson, 11 Cal. 200, 70 Am. Dec. 774, the husband at the time of the marriage was in possession of certain lots to which he had no title; his claim being based upon an instrument not under seal. After the marriage he purchased the lots, paying therefor from the common funds. It was held that the land was community property. While in some of the states in which the law of community property obtains, the husband may dispose of the community property, the rule is otherwise in the state of Washington, where, although the husband has the management and control of the community property, he cannot convey or incumber it unless the wife joins with him in executing the deed or the instrument of incumbrance. 1 Hill's Ann. St. & Codes, § 1400; Holyoke v. Jackson, 3 Wash. T. 239, 3 Pac. 841.

The decree is reversed, and the cause remanded, with instructions to dismiss the bill.

HUNT, District Judge (dissenting). I am constrained to dissent, and deem it proper to give my reasons briefly.

The preference right to buy the land involved in this suit, together with other lands, was in Laack prior to March 25, 1895. This preference right, together with the right of assignment thereof, was expressly conferred by the statutes of the state of Washington. Sections 2175, 2176, Ballinger's Ann. Codes & St. It was pursuant to these statutory provisions that Laack on March 25, 1895, filed application to acquire title to abutting lands, including the particular lands affected by this litigation. Thereafter, on September 9, 1896, the Board of State Land Commissioners, referring to the application of Laack, made formal finding that Laack was entitled to purchase certain lands, including these particular lots. Within a few months thereafter, Laack orally agreed to sell to James D. Davidson a right to buy part of the lands which he was entitled to purchase, and Davidson then paid him eighty dollars as a consideration. The understanding seems to have been that Laack should have the first eight shore lots to be obtained, and then Davidson should have eight,

if they were there, and if there were any still remaining they were to select lots alternately, with a view to sharing equally. They then went to the office of Mr. Bronson, Laack's counsel, and made a writing of their agreement, whereby Laack bound himself to convey portion of the lots to Davidson. The loss of this contract is unfortunate, but that a written contract of sale existed is clearly proven. There is no failure to prove a writing of sale, but lack of proof of exactly what lots were specified in the writing. But a lack of proof of description should not defeat appellee's rights, if Davidson's rights to the lots were acquired under the written contract with Laack, and provided Davidson's rights thereafter passed to appellee. The statutes of Washington prescribe that where no application for purchase was pending, sales of shore lands should be made as school and granted lands are sold. As it is not contended, however, that Davidson bought as he would have had to buy if there had been no application to purchase the lots pending, it follows that he must tie to some application for purchase, or his whole case falls. Now, in the course of events, Laack had directed the release of rights to buy certain of the lots embraced within his original application, so that when title was to be conveyed by the state, there were not as many lots to be divided between Davidson and Laack as were applied for in the application of Laack. Laack and Davidson, however, agreed on a distribution of what there was, and on January 27, 1897, Laack quitclaimed to Davidson his interest in certain parcels applied for, including the lots in question, and assigned all his rights to purchase the same from the state. Meanwhile Davidson had married on January 19, 1897. Laack never asked for, and Davidson never offered, any new consideration for the quitclaim deed. Laack, who seems to have had a high idea of the obligations he was under by his first written agreement, says that the only change between the new and old contracts was "different lots were given to Davidson," and that this was "because Davidson told me there was nothing left." The evidence is also that Laack said to Davidson that they would take what was left; and the deed was made. Laack was not very definite in his testimony as to the circumstances under which the quitclaim deed was passed. In part of his testimony he said that he and Davidson had made a new agreement, and in another part he said that the money was paid under the old agreement. The witness was apparently confused by the many questions put to him in the endeavor to elicit from him statements which would justify the conclusion that the old agreement was canceled or abandoned. Toward the close of his examination, when asked whether it was not under the "new bargain" and "new arrangement" that Davidson purchased these lots from the state, the witness replied: "Well, I will tell you. Of course we made a new bargain, but the old bargain was there, and the money was there on the old bargain; the money was right with it, so I don't know whether it was a new bargain or old bargain." And, again, when asked if he had not acted under "the old agreement," the witness said: "It was the same thing. I don't see what is the difference between the old and the new. It is all the same thing, anyhow, pretty near." Without quoting further from the testimony

of the witness himself, it is plain that his right to purchase was the only basis of Davidson's right, and I think that the most reasonable construction to be put upon his evidence, when considered with the record facts, is that the quitclaim deed to Davidson was made in fulfillment of the contract to convey, which was drawn by Mr. Bronson, and for which Davidson paid Laack the eighty dollars paid, which Laack had retained. If the parties had intended to abandon the old agreement, nothing would have been so natural as for Davidson to have paid additional money, or for Davidson to have waited and purchased for a new consideration from Laack, after the state had conveyed to Laack. But he held hard to the preference right of Laack by availing himself of his rights obtained in consideration of the money originally paid to Laack. I am therefore forced to the opinion that in the whole transaction Davidson dealt with Laack in reliance upon his right to purchase, initiated under the lost agreement, and that he received his quitclaim deed in the carrying out of that agreement.

Believing then that the rights of Davidson to the property are founded upon the first agreement, and that the subsequent deed by Laack to him was but the perfecting of such original rights, and was meant to be such by both parties, and it appearing that Davidson was a single man when these rights were initiated, the law regards the property as separate, and prescribes that title thereto took effect as of a time before community. I am in accord with the opinion of the court, laying down the doctrine of community property generally, that property acquired by either spouse where "the title or cause of the acquisition" precedes the marriage is separate and not community property: but I would not exclude this case from within the application of the rule.

The preferential right of Laack was valuable and legally assignable, and I cannot agree with the conclusion that there was an abandonment of the contract made by Laack with Davidson, assigning an interest in property, to be acquired under this preferential right.

As a result of what I have said, it should follow, in my judgment, that Davidson's rights should be held to have initiated before marriage, and though perfected after marriage were not such as were merged into community ownership, but were capable of being passed by him. I think, too, that the evidence shows that he offered the property for sale, received a fair market price therefor, and ought to be held to his contract.