WILLIAM SEMAR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 52300, 59030.  Promulgated March 24, 1933.

*Frank S. Bayley, Esq.,* for the petitioner.
*John D. Kiley, Esq.,* for the respondent.

MATTHEWS: The only question is whether the stock of the Sunny Point Packing Company acquired by petitioner is community property. This depends in Washington law, as will be shown, mainly on when it was acquired—if acquired before marriage, it is separate property of the husband; if afterwards, the nature of its acquisition becomes important, for all such after-acquired property except as specifically excepted belongs to the marital community. The petitioner contends that he acquired before his marriage on March 1, 1924, only an option, or executory contract, to purchase the shares of stock, and that before the delivery of title and possession of the stock to him in November 1924, he had no property interest or rights in the stock. Respondent, on the other hand, argues that petitioner acquired a substantial property interest in the stock before his marriage, this interest being matured by the expiration of of his first contract of service with the corporation on January 1, 1924. Alternatively, it is urged upon us by respondent that since under the contract petitioner performed no services in consideration for the stock after January 1, 1924, it follows on the petitioner's theory that the petitioner's services were not given before that date, that the stock when delivered in November 1924, was a gift and as such under Washington law petitioner's separate property, the income from which is also separate property and, therefore, taxable to petitioner.

The relevant provisions of the Washington statutes (2 Remington's Comp. Stat. (1922)) are as follows:

§ 6890. Separate property of Husband.

Property and pecuniary rights owned by the husband before marriage, and that acquired by him afterward by gift, bequest, devise or descent, with the rents, issues, and profits thereof, shall not be subject to the debts or contracts of his wife, and he may manage, lease, sell, convey, encumber, or devise, by will, such property without the wife joining in such management, alienation, or encumbrance, as fully and to the same effect as though he were unmarried.

§ 6891. Separate property of Wife.

The property and pecuniary rights of every married woman at the time of her marriage, or afterward acquired by gift, devise, or inheritance, with the rents, issues, and profits thereof, shall not be subject to the debts or contracts of her husband, and she may manage, lease, sell, convey, encumber or devise by will such property, to the same extent and in the same manner that her husband can, property belonging to him.

§ 6892. Community Property Defined—Husband's control of Personalty.

Property, not acquired or owned as prescribed in the next two preceding sections, acquired after marriage by either husband or wife, or both, is community property. The husband shall have the management and control of community personal property, with a like power of disposition as he has of

his separate personal property, except he shall not devise by will more than one-half thereof.

If we turn now to the provisions of petitioner's contract with the company, we find that he agreed on January 5, 1922, to act as manager for the company at a salary of $250 per month (to be increased to $420, in the discretion of a stockholder, one H. C. Strong) until January 1, 1924. As a further consideration for petitioner's services, the stockholders of the company, also parties to the contract, agreed to sell to petitioner 16⅔ shares, being one-sixth of the company's capital stock, on January 1, 1924, at its December 31, 1921, book value. The stockholders agreed to deliver this stock to two of their number as trustees to hold until paid for by the petitioner. It was expressly provided that:

\* \* \* All dividends declared upon any of said stock after Jan. 1, 1922, while this contract is in force and while any of said stock remains unpaid for, shall be paid to third parties, but shall be credited upon the purchase price of said stock in case first party buys the same as herein provided. \* \* \*

If first party is unable to pay in full for all of said stock on January 1, 1924, he shall be entitled to receive from the Trustees such part thereof as is then paid for either by him or by application of dividends. The balance of said stock shall be held by the Trustees until January 1, 1929, and the terms of this agreement shall be extended to that date; \* \* \*

Then follows this significant paragraph:

It is understood and agreed that in case of a sale of the assets of second party or the liquidation thereof before January, 1924, and while first party is still in its employ hereunder, first party shall receive from said Trustees any and all amounts distributed to and on account of the stock set aside hereunder for the first party in excess of its book value December 31, 1921, deducting from said book value, however, dividends paid on said stock since January 1, 1922. It being the intention that in case the completion of this contract is rendered impossible because of a sale or liquidation of second party's assets, then first party shall be entitled to receive the distributive share of said stock less any amount then unpaid on its purchase price.

The petitioner was still in the company's employ on January 1, 1924, and continued to act thereafter as manager for it. On that date, however, he had not paid anything toward the purchase of the stock nor had any dividends been declared which must have been applied toward its purchase. In November 1924, the company sold its assets at a large profit, declared a resulting dividend, and the amount thereof allotted to the petitioner was sufficient to pay for his stock, which was thereupon, and after his marriage on March 4, 1924, delivered to him.

Was petitioner's interest in this contract after January 1, 1924, and before his marriage on March 4 of that year "property" within the meaning of Washington law and therefore part of his separate

estate? A well known authority on the law of community property says:

That the word "property" as used in the codes and statutes defining separate and community property, should be given a broad and inclusive meaning is conceded by all the authorities. * * *

The term "property," as used in the statutes defining separate and common property can not reasonably be held to be less than the meaning of the same word in the law of bankruptcy. It includes choses in action as well as choses in possession, and inchoate rights as well as those perfected by higher forms of legal security. And accepting these decisions relating to causes of action for personal injuries as sound, we have, as the result, a meaning of the word "property" so broad as to include not only property in the ordinary sense but all forms of enforceable claims having a pecuniary value, even when they arise out of the violation of the right to personal security. (McKay on Com. Prop. 2nd ed., 1925, § 178, pp. 137, 138.)

It is quite obvious that the petitioner had much more than, as he contends, a mere option to buy the stock. He had a right to have the dividends which might be declared on such stock applied by the stockholders toward the purchase of the stock for himself. While not owning legal title to the tree, in other words, he was to be given its fruits; the right to enjoy the fruits being, of course, one of the most important incidents of ownership. Furthermore, in the event of sale of the company's assets so as to render performance of the contract according to its terms impossible, petitioner was to receive his proportionate share of amounts distributed to stockholders in excess of the 1921 book value plus dividends. The facts amply show that the company's stock had increased greatly in value by January 1, 1924, and that its surplus was large. Moreover, there had already been initiated at this time the contract of sale which was finally performed later in the year. While it is no doubt true that even a stockholder has no ownership of his corporation's assets, the legal personality of the corporation intervening between stockholder and assets, *Rhode Island Hospital Trust Co.* v. *Doughton,* 270 U. S. 61, it is nevertheless true that a stockholder has a very immediate interest in those assets on their sale and the dissolution of the corporation. And again, while petitioner here was not on January 1, 1924, a stockholder in the company, his interest on that date so closely approximated one that it would be very difficult to draw any line of substance between his interest and that of a stockholder of record. We are of the opinion that petitioner's contract right on January 1, 1924, which later brought him title to the company's shares, was one of real substance and clearly "property" within the meaning of the Washington statutes.

And we are of the opinion that petitioner's "property" was acquired before March 4, 1924, when he married. It has been said:

As between husband and wife, when a right, legal or equitable, is acquired whether before or during marriage, all things of value into which the initial right develops by the performance of conditions, the running of time or the like, or into which it is converted by an assignment, or if the initial right rests in obligation, all that which is obtained through the performance, discharge, satisfaction, enforcement or assignment of the obligation, are deemed in law to have been acquired as of the date of the acquisition of the initial right, and take the character, as separate or common, of that right.   [McKay, §517, p. 352.]

And again by the same authority:

Property acquired by or in discharge of a conventional obligation.—Such property as between husband and wife and all others claiming under them, has its origin and is acquired as of the date when the obligation becomes binding, and not as of the time when the money is paid or the thing is delivered or conveyed. *Welder* v. *Lambert*, 91 Tex. 510, 44 S. W. 281; *In re Moseman's Estate*, 38 La. Ann. 219; *Guye* v. *Guye*, 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N. S.) 186. The authorities are practically unanimous in support of this rule. * * * [§533, p. 359.] .

There is no doubt on the authorities that this rule obtains in Washington. The date of acquisition of property determines its character as separate or community property, *In re Brown's Estate*, 214 Pac. 10 (Washington); and cases therein cited. And the date of acquisition taken is that when the equitable interest arises and not when the legal title is transferred, *Guye* v. *Guye, supra; Ahern* v. *Ahern*, 71 Pac. 1023 (Washington); *Forker* v. *Henry*, 57 Pac. 811 (Washington); *Teynor* v. *Heible*, 133 Pac. 1 (Washington). The same rule appears to be general, as stated by McKay, §533, *supra*, and to obtain also in Nevada, *Barrett* v. *Franke*, 208 Pac. 435, 437; and in California, *Vieux* v. *Vieux*, 251 Pac. 640, 643. Cf. 5 R. C. L. 834.

Our prior decisions have supported the same view. In *K. E. Merren*, 18 B. T. A. 156; affirmed in 51 Fed. (2d) 44, money and stock received by the petitioner during marriage in payment for property sold by him before marriage was held not community property. The stock was held in escrow so that he did not receive title to it until after marriage. We said:

* * * The property which was sold and which gave rise to the money, the income now under consideration, was the separate property of the husband. He had sold it and had completely divested himself of title thereto and dominion thereover prior to his marriage. At the time of the sale the amount to be received by the petitioner was definitely fixed and constituted an obligation due him. The right to receive the purchase price was itself property; it became vested in the petitioner prior to his marriage and could not, therefore, become community property under the Louisiana statute.

More recently we held in *John M. King*, 26 B. T. A. 1158, with respect to a fee received by a lawyer after the death of his wife but on a contract entered into with his client during the period of his marriage, that it was community property, to be returned as income

by the lawyer and his deceased wife's estate, one-half each, as such. We said:

\* \* \* Petitioner contends that in cases of inchoate rights it is the *time* of the *inception* of the *initial rights* that determines the status of property as between community and separate. In this connection, McKay, a recognized authority, in his book on Community Property, 2d ed., par. 520, says:

An inchoate title or pecuniary right is property in the sense of the law of separate and common property, just as truly as the most unimpeachable or perfect title. It takes its rank as separate or common property, for the same reason, and in response to the same tests, as the perfect or complete title or right, and it retains its character as separate or common so long as it can be traced; *its development from an inchoate to the absolute or complete form does not shift it from one fund to another; it may be relieved of conditions and burdens but this does not change its character; it may pass from a conditional to an unconditional form, without change or legal character; it may be exchanged for other things or rights, and its character as separate or common passes to whatever was acquired by the exchange.* If the property consists of an obligation, either contractual or delictual, it may be performed or enforced; and whatever is so acquired takes the same character as the obligation. [Italics supplied.]

We think, as we have said, that the petitioner here had an inchoate right to the stock in question before his marriage which does not, because of the subsequent acquisition of legal title and receipt of the stock certificates thereafter, any the less constitute property owned before the marital community began; that such stock was the separate property of the petitioner; and that all dividends from it, therefore, constitute income to the petitioner for all the years here in question.

Reviewed by the Board.

*Judgment will be entered for the respondent.*