ROBERT H. LORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 59385.   Promulgated April 18, 1934.

*Ralph H. Cake, Esq.,* for the petitioner.
*Warren F. Wattles, Esq.,* for the respondent.

426

## OPINION.

Arundell: We have no question here as to whether or not the amount received by petitioner from Deere & Co. constituted income. The question presented is whether such income was the separate income of petitioner or community income divisible between petitioner and his wife, they being residents of the State of Washington at the time of receipt.

Petitioner's view is that the contract of April 8, 1918, and all his rights under it, expired when he left the service of Deere & Co.; that there was no consideration on his part for the offer contained in the letter of November 20, 1924, hence it was a mere offer and not a contract; and that such offer did not ripen into a contract until he performed the conditions thereof by maintaining the prescribed attitude

towards Deere & Co. In other words, there was no contract until 1928, when he was a resident of Washington, and the income under such contract was then community income.

The respondent urges that the substantial consideration furnished by petitioner for the sum he received was the services he had previously rendered; that his receipt of the proceeds of the stock relates back to his contract of employment, which, being entered into in Oregon, makes the proceeds his separate income, under the rule that in determining the property rights of spouses the property is deemed to be acquired as of the time of acquisition of the initial right of which it is the development.

We are unable to accept petitioner's theory that the contract of April 8, 1918, and all his rights under it completely expired when he left the service of his employer, and that a new contract—completed by performance in 1928—was substituted for it. We recognize the rule that where there are two contracts complete in themselves relating to the same subject matter, but of different dates, the later one supersedes the earlier. But that is not the situation here. The later one does not say what constituted "the common stock contract" therein mentioned, from which it is obvious that any attempt on the part of petitioner to enforce any rights under the later one would have necessitated his establishment of the prior agreement. Clearly it was not intended that the offer in the letter was to stand as complete in itself. The language used demonstrates the intent not to be a complete abrogation of the prior contract, but a modification. Note the wording: " *   *   *   it is our idea *to continue* your common stock contract in force   *   *   *." But even if the letter be considered a new contract superseding the old, there was no lack of consideration, as contended by petitioner, which would make it ineffective until performance. Where there is a modification of a contract "the original consideration attaches to and supports the modified contract." *Long* v. *Pierce County*, 22 Wash. 330; 61 Pac. 142. "The substitution of a new contract for an old one in itself constitutes a sufficient consideration." *Stofferan* v. *Depew*, 79 Wash. 170; 139 Pac. 1084.

Moreover, looking at the matter from a practical point of view, it is inconceivable that a negative or passive attitude on the part of petitioner, simply refraining from doing or saying anything that might be inimical to the welfare of Deere & Co., constituted the entire consideration for the substantial sum he received in 1928. It is a far more reasonable view that petitioner's receipt of the proceeds of the stock had its inception or source principally in the services rendered prior to the discontinuance of service with the company. This, as we read it, was the intent of the company in its letter of November 20, 1924, expressed in the words: "In view of the fact that you have been

with this organization many years * * * it is our idea to continue your common stock contract in force." Thus the services rendered in the past were regarded by the company as at least a part of the consideration for the sum paid petitioner after he left the employ of the company. Cf. *Arthur L. Lougee*, 26 B.T.A. 23; affd., 63 Fed. (2d) 112.

Thus the income received by petitioner in 1928 had its source in Oregon, a noncommunity state, while he and his wife were domiciled there. Separate property of the husband acquired in a foreign jurisdiction and taken into the State of Washington remains his separate property in that state. *Brookman* v. *Durkee*, 46 Wash. 578; 90 Pac. 914. And, under the doctrine of relation, the time and place of the initiation of the right to acquire property is determinative of its character when reduced to possession. McKay, in his work on Community Property (§517), states the rule as follows:

*The controlling principle stated.*—As between husband and wife, when a right, legal or equitable, is acquired whether before or during marriage, all things of value into which the initial right develops by the performance of conditions, the running of time or the like, or into which it is converted by an assignment, or, if the initial right rests in obligation, all that which is obtained through the performance, discharge, satisfaction, enforcement or assignment of the obligation, are deemed in law to have been acquired as of the date of the acquisition of the initial right, and take the character, as separate or common, of that right.

An inchoate title is regarded as a right within the scope of the above rule and "its development from an inchoate to the absolute or complete form does not shift it from one fund to another; * * * it may pass from a conditional to an unconditional form, without change or [of] legal character * * *." McKay §520. Under these rules the character of the proceeds from the sale of stock, as separate or community, is determined by and is the same as that of the initial right, even if that was but an inchoate right, of which the proceeds are the fruit.

Under these rules, applied to a case where a resident of a community property state marries between the time of inception of a right and its fruition, the property acquired is regarded as separate property. In *Davidson* v. *Woodward*, 156 Fed. 915, a case arising in Washington, it is said:

If one marries after initiating a title, it is his separate property in all cases wherein, by the doctrine of relation, the title takes effect as of the time of the first act initiating it, as in the case of a settlement under the homestead or preemption laws of the United States. *Harris* v. *Harris*, 71 Cal. 314, 12 Pac. 274; *Forker* v. *Henry*, 21 Wash. 235, 57 Pac. 811; *Gardner* v. *Burkhart*, 4 Tex. Civ. App. 590, 23 S.W. 709. Property purchased by a contract before marriage but not paid for until after marriage, is also separate property. *Lawson* v. *Ripley*, 17 La. 238; *Medlenka* v. *Downing*, 50 Tex. 32; *Wade's Succession*, 21 La. Ann. 343.

In *Guye* v. *Guye*, 63 Wash. 340; 115 Pac. 731, the husband had contracted to purchase land when he was single, but did not receive a deed until after his marriage. The property was held to be his separate property. Similarly, in *Teynor* v. *Heible*, 74 Wash. 222; 133 Pac. 1, homestead property upon which entry was made by a single man who received a patent to the land after his marriage was held to be separate property.

The above authorities were cited and applied in *William Semar*, 27 B.T.A. 994. In that case the taxpayer, who was a single man on January 1, 1924, and a resident of the State of Washington, had on that date a right to purchase stock of his corporate employer, the contract containing a provision for crediting dividends to the purchase price. He was married on March 1, 1924. On November 8, 1924, a dividend was declared by the corporation, a proportionate part was credited to the taxpayer's account, and a stock certificate delivered to him. We held that the stock so acquired was his separate property by reason of the initiation of his right to it prior to his marriage, and the dividends therefrom were his income.

In this case petitioner's services, which constituted at least a part of the consideration for the stock, were performed while he was domiciled in Oregon, pursuant to an agreement executed while he was in that jurisdiction; the continuation of services as a condition precedent to delivery of the stock was waived while he was domiciled in that state. Accordingly, under the authorities above set out, his right to the stock, or its proceeds, originated while he was domiciled in Oregon, under the laws of which it was his separate property, and the proceeds of the stock when received retained that character, notwithstanding his then residence in a community property state.

*Decision will be entered for the respondent.*