[No. 9291. *En Banc.* May 10, 1911.]

# Eliza W. P. Guye, *Appellant*, v. John W. Guye *et al.*, *Respondents.*[1]

Husband and Wife—Common Property—Income—Statutes. The common property act of 1871, providing that the income or proceeds of the separate property of both husband and wife accruing during marriage shall be common property, did not impress separate property with a trust in favor of the common use of both, in view of other provisions of the act giving each the sole control, management, and power of disposition of their separate estates; but simply provides that the income thereof, when it comes into existence, shall be common property.

Same—Statutes—Change of Status. The common property act of 1871, having provided that the income of separate property should be common property, the legislature would not have power by a subsequent act to declare income already accrued to be separate property, but it could so provide as to future income.

Same — Income of Common Property—"Interest." The provision in the common property act of 1871, relating to both personal and real property, that the rents, profits, "interest" and income of separate property shall be common property, means only that the entire income thereof shall be common property, "interest" not having any further significance.

Husband and Wife — Community Property — Acquired After Marriage—Enhancement in Value. The natural enhancement in value during marriage of the separate property of the spouses is not property acquired during marriage, within the spirit of the community property statutes, which provides that property acquired before marriage and in certain ways, together with the rents, issues, and profits thereof, shall be the separate property of the spouse acquiring it, and that all other property acquired after marriage shall be community property.

Same—Purchase Before Marriage. Where the husband purchased land, took possession, made improvements, and paid at least part of the purchase price before marriage, it is his separate property, although he received the deed after marriage, in the absence of a showing that community funds entered into the purchase.

Same—Taxes on Separate Property—Presumptions. Where the husband has separate income, it cannot be presumed that the taxes

[1]Reported in 115 Pac. 731.

on his separate property during marriage were paid with community funds.

SAME—CONTINUANCE OF STATUS—PRESUMPTIONS. It will be presumed that property once shown to be separate property continued to be such until the contrary is made to appear.

SAME—EVIDENCE—WIFE JOINING IN MORTGAGE. The joinder of a husband and wife in a mortgage of real estate is not evidence that the property was community property.

SAME—COAL LAND ENTRIES. Lands acquired under coal land entries by a husband are his separate property, in view of the act providing that each spouse may make an entry and acquire title, that the entryman must swear that the entry is made for his own benefit and not directly or indirectly for the benefit of any other person, and requiring no residence on the land.

SAME—MINING CLAIMS. Mining claims acquired by a husband are his separate property, in view of the act permitting either spouse to make entry and acquire full title from the United States without the aid or intervention of the other.

Appeal from a judgment of the superior court for King county, Albertson, J., entered October 19, 1910, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action to quiet title and for partition. Affirmed.

*Blaine, Tucker & Hyland,* for appellant, contended, among other things, that the interest of the wife under the common property law was a fixed interest. Cooley, Constitutional Limitations (7th ed.), p. 513; *Rose v. Rose,* 104 Ky. 48, 46 S. W. 524, 84 Am. St. 430, 41 L. R. A. 353; *Rose v. Sanderson,* 38 Ill. 247; *Mabie v. Whittaker,* 10 Wash. 656, 39 Pac. 172; *McNeer v. McNeer,* 142 Ill. 388, 32 N. E. 681, 19 L. R. A. 256; *Jenney v. Gray,* 5 Ohio St. 45; *White v. White,* 5 Barb. 474; *Holmes v. Holmes,* 4 Barb. 295; *Herhizer v. Florence,* 39 Ohio St. 516; *Lessee of Thompson's Heirs v. Green,* 4 Ohio St. 217; *Clark v. Clark,* 20 Ohio St. 128; *Lemon v. Waterman,* 2 Wash. Ter. 485, 7 Pac. 899; *Criscoe v. Hambrick,* 47 Ark. 235, 1 S. W. 150; *Bachman v. Chrisman,* 23 Pa. 162; *Burson's Appeal,* 22 Pa. 164; *Dunn v. Sargent,* 101 Mass. 337; *Westervelt v. Gregg,* 12 N. Y. 202, 62

Am. Dec. 160; *Junction R. Co. v. Harris,* 9 Ind. 184, 68
Am. Dec. 618; *Mitchell v. Violett,* 104 Ky. 77, 47 S. W. 195.

*Higgins, Hall & Halverstadt* and *Morris, Southard &
Shipley,* for respondents, contended, *inter alia,* that if either
spouse, prior to marriage, acquires an equitable interest in
real estate, the property is separate, irrespective of the date
of acquisition of the legal title.    6 Am. & Eng. Ency. Law
(2d ed.), p. 325; McKay, Community Property, pp. 60-114;
*McDougal v. Bradford,* 80 Tex. 558, 16 S. W. 619; *Gardner
v. Burkhart,* 4 Tex. Civ. App. 590, 23 S. W. 709; *Welder v.
Lambert,* 91 Tex. 510, 44 S. W. 281; *Texas & N. O. R. Co. v.
Speights* (Tex. Civ. App.), 59 S. W. 572, 1 Tex. Ct. Rep.
513; *Hillen v. Williams,* 25 Tex. Civ. App. 268, 60 S. W.
997; *Alford Bros. & Whitesides v. Williams,* 41 Tex. Civ.
App. 436, 91 S. W. 636; *Lake v. Lake,* 52 Cal. 428; *Morgan
v. Lones,* 80 Cal. 317, 22 Pac. 253; *In re Boddy's Estate,*
119 Cal. 402, 51 Pac. 634; *In re Pepper's Estate,* 158 Cal.
619, 112 Pac. 62, 31 L. R. A. (N. S.) 1092; *Barbet v.
Langlois,* 5 La. Ann. 213; *Woodward v. Davidson,* 150 Fed.
840; *Davidson v. Woodward,* 156 Fed. 915; *Landes v. Brant,*
10 How. 348; *Stark v. Starrs,* 6 Wall. 402; *United States
v. Detroit Timber & Lumber Co.,* 200 U. S. 321; *Forker v.
Henry,* 21 Wash. 235, 57 Pac. 811; *Ahern v. Ahern,* 31
Wash. 334, 71 Pac. 1023, 96 Am. St. 912; *Rogers v. Min-
neapolis Threshing Machine Co.,* 48 Wash. 19, 92 Pac. 774,
95 Pac. 1014.    Appellant's rights to rents from her hus-
band's separate estate, under the act of 1871, depended upon
their accruing during her life and the life of the deceased, a
mere expectancy which was subject to the absolute power of
the legislature.    *Alexander v. Alexander,* 85 Va. 353, 1 S. E.
335, 1 L. R. A. 125; *Hart v. Leete,* 104 Mo. 315, 15 S. W.
976; *Percy v. Cockrill,* 53 Fed. 872; *Rugh v. Ottenheimer,*
6 Ore. 231, 25 Am. Rep. 513; *Niles v. Hall,* 64 Vt. 453, 25
Atl. 479; *Randall v. Kreiger,* 23 Wall. 137; *Allen v. Hanks,*
136 U. S. 300; *Stephens v. Cherokee Nation,* 174 U. S. 445;

*Marley v. Lake Shore & Michigan S. R. Co.*, 146 U. S. 162;
*Taylor v. Taylor*, 12 Lea 490; *Baker's Ex'rs v. Kilgore*,
145 U. S. 487. Mining claims are by force of Federal stat-
utes separate property of the locator perfecting title thereto.
Morrison, Mining Rights (12th ed.), p. 124; Barringer &
Adams, Law of Mines & Mining, p. 388; 1 Lindley, Mines,
§§ 169, 324, 535, 539; *O'Connel v. Pinnacle Gold Mines Co.*,
140 Fed. 854; *120 Mining Co. v. Bullion Min. Co.*, 3 Sawyer
634; *Eureka Consol. Min. Co. v. Richmon Min. Co.*, 4 Saw-
yer 302; *Talbott v. King*, 6 Mont. 76; *Kahn v. Old Telegraph
Min. Co.*, 2 Utah 174; *Forbes v. Gracey*, 94 U. S. 762;
*Bradford v. Morrison*, 212 U. S. 389; *Elder v. Horseshoe
Min. & Milling Co.*, 194 U. S. 248; *Elder v. Wood*, 208 U. S.
226; *Clipper Min. Co. v. Eli Min. & Land Co.*, 194 U. S.
220; *Creede etc. Min. Co. v. Uinti etc. Min. & Transp. Co.*,
196 U. S. 337.

FULLERTON, J.—Francis M. Guye and Eliza W. P. Guye
intermarried at the city of Seattle on March 21, 1872, and
thereafter, until the death of Francis M. Guye on May 25,
1908, lived together as husband and wife. There was no
issue of their marriage. Francis M. Guye had been formerly
married and was the father of children born of such mar-
riage. At the time of his death he left estate in the state of
Washington consisting of real property of great value,
which he specifically devised by will to the different members
of his family as if the property, one tract excepted, was his
separate property. The will was in form a nonintervention
will, and was duly entered for probate as such. In the will
he named his son John W. Guye and one Rolland H. Denny
as executors. The executors named accepted the trust and
proceeded with the due administration of the estate. The
widow, Eliza W. P. Guye, claimed that the entire property
was community property, and on her claim being disallowed
by the executors, brought this action to have the status of
the property determined and her rights therein adjusted.

In the final decree the trial judge found somewhat more of the property to be community property than the devisor or the executors recognized as such, but did not allow the claim of Mrs. Guye to its fullest extent. From so much of the decree as is adverse to her interests, she appeals.

Based on differences between the time and manner of its acquisition, counsel have divided the land left by the deceased into five distinct classes: First, certain tracts of land acquired by the deceased by purchase and for which deeds had passed prior to his marriage with the appellant; second, a tract of land acquired by the deceased by purchase prior to his marriage with the appellant, but for which the deed passed after such marriage; third, a tract of land acquired from the United States by the deceased after his marriage, under a coal land entry; fourth, certain tracts acquired from the United States by the deceased after his marriage, under the mining laws; and fifth, certain tracts acquired by the deceased by purchase from private holders subsequent to his marriage.

The claim that the land first described is community property is based principally upon the somewhat peculiar common property statute of 1871. Laws 1871, p. 67. By section 1 of that act, it was provided that all property owned by the husband or wife at the time of the marriage, and all the property acquired by either of them during the marriage by gift, devise, descent, bequest or inheritance, and all property purchased or acquired with the separate funds of either during marriage, and designated as separate property as per deed or inventory in accordance with the provisions of the act, should be the separate property of the spouse acquiring it, the same as though no marriage existed. Section 2, provided that all property acquired during the marriage by the joint labors of the husband and wife, or by their individual labors, together with all "rents, profits, interest or proceeds of the separate property of both accruing during the marriage," should be common property.

Sections 8, 9, 10 and 11, defined the class of debts for which the common and separate property might be sold. Section 14 provided that the husband should have the sole control and management of his own separate property, and need not be joined by the wife in any sale, transfer or encumbrance thereof. Section 15 provided that the wife should have the sole control and management of her own separate property, and need not be joined by the husband in any sale, transfer or encumbrance thereof, unless the property be that acquired by gift from the husband. Section 22 provided that the "common property being partnership property" the wife's share should be one-half thereof and should be hers and her heirs forever. Section 23 provided that neither dower nor curtesy should thereafter accrue. Section 26 provided that the husband should not by will deprive the widow of any rights under the act.

This statute remained upon the statute books but two years. At the next session of the legislative assembly it was repealed and a new law enacted. It is not necessary to point out all the differences between the new law and the one cited, but the radical changes were that the new law failed to provide that the rents, profits, issue or proceeds of the separate property of the spouses should be common property, and it eliminated section 22, which declared the common property to be partnership property. This act remained in force until 1879, when the present community property law was enacted. By the terms of the latter act, the rents, issues, and profits of separate property are expressly declared to be separate property. By the latter act also, the name "common property" was changed to "community property," and it was expressly provided that the property rights of the spouses were thereafter to be governed by the act, in the absence of a marriage settlement or post-nuptial agreement, "any act to the contrary notwithstanding."

By reference to the dates above given, it will be observed that Francis M. Guye and the appellant intermarried while

the act of 1871 was in force. Based on this fact, the appellant argues that the act of 1871 fixed the rights of property between the appellant and her husband, "and that any subsequent law could in no way alter or change it;" and "that inasmuch as section 2 of that act provides that all property acquired during marriage by the joint labors of the husband and wife, or by their individual labors, together with all rents, profits, interest or proceeds of the separate property of both accruing during marriage, shall be common property, it means nothing else than that real property of the husband and wife, when taken in consideration of section 22, becomes partnership assets and the husband and wife each become partners, and the capitalization is what each person puts into the property, and any increase or unearned increment becomes partnership or common property." In other words, it is contended that a marriage during the existence of the act of 1871 impressed the separate property with which each of the contracting parties were then seized with a trust to pay the income thereof to the common use of both spouses during the continuance of the marital relation, or until such time as they could mutually agree on some other disposition of it.

We are not able to agree with this contention. That such was not the intent of the statute is plain from the very statute itself. The statute does not, in express words, devote the income of the separate property of each of the spouses to the common use of both, nor does it in express words charge such separate property with a trust to that effect. In so far as the intent is expressed, it does nothing more than provide that the income of separate property, when it comes into existence, shall be common property. And that no such intention is implied is clear from the fact that such a construction is inconsistent with other express provisions of the statute. It is provided, it will be observed, that the spouse owning or acquiring separate property during the marriage relation shall have the sole control and management thereof,

and need not be joined by the other spouse "in any sale, transfer, or encumbrance thereof." It is provided also in the act that the separate property of a spouse shall be liable for the separate debts of that spouse, whether contracted before or subsequent to the marriage. These provisions are wholly inconsistent with the idea that the separate property of one spouse is, in virtue of the marital relation, impressed with a charge or trust of any kind in favor of the other or in favor of the common use of both, and to our minds conclusively determines the contrary. There can be no trust in property for the common benefit of two persons where one of them has power at any time to destroy the trust by disposing of the property, or by putting it to another use. In so far as the rents, profits, interest or proceeds of the separate property of either came into being during the existence of this statute, we have no doubt that they belonged to the husband and wife in common, and that it was not competent for the legislature, by subsequent enactment, to declare such property to be the property of the one or the other; but as to rents, issues, and profits of such property accruing subsequently to the passage of the act, we have no doubt that the power existed.

Counsel, however, call attention to the word "interest" in the phrase "rents, profits, interest and proceeds," and argue therefrom that something more than the mere income from the real property was meant thereby. But it must be remembered that the framers of the act used the phrase with reference to personal property as well as real property, and could possibly have had reference to a very common source of income from that character of personal property known as money. Be this as it may, however, even a casual perusal of the act will show that its framers had no very accurate conception of the meaning of words or very great skill in their use; at least, there is nothing in the wording of the act elsewhere that would imply that they had any such nicety in their use as this construction would imply. We rather

think, from the context, that this phrase was the somewhat labored effort of the draughtsman of the law to convey the idea that the entire income of the property described should become common property.

As this act stood on the statute books but two years, and as we hold that it was within the power of the legislature to say that the future income and proceeds of the separate property of the spouses should be the property of the spouse owning the separate property, it is not necessary that we discuss the effect of section 22 of the act, which declared common property to be the partnership property of the spouses, there being no showing in the record that any of the income of the property now under discussion was put back onto the property in the way of permanent fixtures or improvements which enhanced its value. Counsel argue, however, that the natural enhancement in the value accruing while the marital relation existed should be treated as community property. They point out that the tracts adjudged to be separate property by the trial court have enhanced in value practically three hundred and fifty thousand dollars since the marriage of the appellant and Francis M. Guye, and contend that it is property acquired during marriage within the spirit and intent of the statute. But we think this contention untenable also. Since by the statute the spouse owning separate property is entitled to the rents, issues and profits thereof, so such owner must be entitled to the natural increase in value, as such increase is as much the issue of such property as would be the rents derived therefrom. So, also, under such a rule, the ownership of a specific tract might be constantly changing. As long as its value remained stationary or decreased it would be separate property. But the moment it increased in value it would become mixed property; that is, in part separate and in part community. And so, again, property that is separate property today might be mixed property tomorrow, and on the next day again be separate property, owing to its fluctuation

in value. We cannot think this the meaning of the statute. We think the statute meant to declare that a specific article of personal property, or a specific tract of real property, once the separate property of one of the spouses, no matter how it may fluctuate in value, remains so, unless, by the voluntary act of the spouse owning it, its nature is changed.

The cases relied upon by counsel to support this contention we shall not notice specifically. They call special attention, however, to the case of *White v. White*, 5 Barb. 474, and as that case is illustrative of the others, we will point out wherein we think the question at bar differs from the question there determined. The case cited was a suit by the wife against the husband. It appears that, subsequent to the marriage between the parties, the wife inherited from her father's estate a considerable tract of land situated in the state of New York. That after she had thus acquired the title, the legislative assembly of that state passed an act, the second section of which read as follows:

"The real and personal property, and the rents, issues and profits thereof, of any female now married, shall not be subject to the disposal of her husband, but shall be her sole and separate property, as if she were a single female, except so far as the same may be liable for the debts of her husband heretofore contracted." Laws New York, 1848, p. 307.

The suit was based upon this provision of the statute. The complaint set forth that the wife took possession of the inherited land soon after it was set apart to her by the commission appointed to make partition, and that she had continued to reside thereon until the last few weeks prior to the filing of the complaint, during which time she had been prevented from occupying the premises by her husband. It was further alleged that since she had acquired the property her husband had had the management and control of the same, and had enjoyed the rents, issues, and profits thereof; that he was a man of idle habits and addicted to the use of spirituous liquors; that he had been careless and improvident

in the management and cultivation of the farm and had greatly neglected it; that after the passage of the act above named, he had avowed his determination to exercise the exclusive control of the land, and had prevented the plaintiff from exercising any control thereof, and had finally, by personal force and violence, expelled her therefrom. A demurrer was interposed to the complaint, and the court held that it did not state facts sufficient to constitute a cause of action, basing its decision on the ground that, by the common law, and the law in force in the state of New York prior to the passage of the act in question, the husband, by virtue of the marriage contract, became seized of a freehold estate in the real property of his wife, and was entitled to take the rents, issues, and profits of the land during their joint lives; and, further, since children had been born alive to them, he had a freehold estate during his natural life as tenant by curtesy in the property, which right was a vested right and could not be taken away by any subsequent enactment of the legislature. This case, it is at once apparent, has no analogy to the case at bar, unless we are to hold that the statute of 1871 gave the wife, at the time of the marriage, a vested interest of some sort in the separate property of the husband. But this, as we have said, we are unable to do. Had the husband in the case at bar attempted to claim as his separate property, by virtue of the subsequent statutes, rents, issues and profits of his separate property which had come into being during the time the act of 1871 was in force, the case cited would have bearing, but no such question, as we have said, is pointed out by the record. The case furnishes no aid by which to determine the proper construction of the statute of 1871. We conclude, therefore, that the property of the first class cited was rightly adjudged to be the separate property of the husband.

The tract of land forming the second class, as classified by counsel, was purchased from the executors of the estate of Charles C. Terry. The record shows that Charles C.

Terry died February 17, 1867; that he left a will in which he named Franklin Mathias and Erasmus Smithers as executors, with power to sell and convey the real estate of which he died seized, at such times, at such prices, and on such terms as the executors should deem wise; that pursuant to the power conferred by the will, the executors sold the lot of which the tract now in question is a part to Francis M. Guye and one Charles Burnett on March 20, 1870, some two years prior to the marriage of Francis M. Guye to the appellant; that thereafter the lot was divided between the purchasers, Francis M. Guye taking the west half; that Guye took possession of the land awarded him, erected buildings thereon and otherwise improved the same; that he subsequently rented the same to tenants and collected rents therefrom, all prior to his marriage with the appellant; that a deed to the property was made by the executors January 7, 1873, nearly one year after the marriage of Francis M. Guye and the appellant; that some two years later a return to the probate court was made by the executors of the sale, reciting that a sale of the property was had on March 29, 1870, to Guye and Burnett for $500, and asking that the sale be confirmed. The record made by the executors does not show when the purchase price of the lot was paid. Burnett, however, testified that the negotiations leading up to the purchase of the lot were transacted by Guye, and that some part of the purchase price was paid at the time of the purchase, but whether all or not he did not remember. There was no evidence of any other payment.

The appellant bases her claim of a community interest in this tract on the fact that the deed to the same passed after her marriage with Guye, and the presumption, arising from the manner in which business is ordinarily conducted, that the purchase price was paid at the time the deed was delivered. But we cannot think this a just deduction from the facts shown. Clearly, Guye had a valid subsisting interest in this property at the time of his marriage. He had

taken possession of it and improved it, and paid a part at
least of the purchase price. Had it been shown that the
balance of the purchase price had been paid with community
funds after the marriage, it might well be that, under the
doctrine of *Heintz v. Brown,* 46 Wash. 387, 90 Pac. 211, 123
Am. St. 937, the property would have been community prop-
erty "to the extent and in the proportion that the considera-
tion is furnished by the community, the spouse supplying the
separate funds having a separate interest in the property in
proportion to the amount of his or her investment," but
clearly, the entire property could not be community property.
But there is no evidence in the record that community funds
entered into the purchase price of the property. Therefore,
for the want of some rule with which to measure such interest,
if for no other, the court cannot hold that the community had
any interest in this property.

The appellant calls attention to the fact that, during the
forty years of her married life with Francis M. Guye, large
sums were paid in taxes on this separate property, and she
asks the court to presume that the money with which they
were paid was community funds, and to charge the land with
one-half thereof for her benefit. But we cannot presume
that the funds used to pay the taxes were community funds.
What would have been the rule had it been shown that the
husband had no separate income with which to pay these
taxes, we do not need to discuss; but where, as here, it is
shown that he did have such separate income, there can be
no presumption that he used community funds for the pur-
pose of paying his separate debts. The presumption is
always in favor of honesty and fair dealing, rather than to
the contrary. Moreover, the right of the spouses in their
separate property is as sacred as is the right in their com-
munity property, and when it is once made to appear that
property was once of a separate character, it will be pre-
sumed that it maintains that character until some direct and
positive evidence to the contrary is made to appear.

Nor do we think the fact that the spouses have joined in mortgaging property sufficient evidence on which to found a claim that the property mortgaged is community property. While the statute allows a husband or wife to sell and encumber his or her separate property, yet no prudent purchaser or mortgagee will ever take the separate deed or mortgage of a married man or married woman even when the other spouse sits by and disclaims interest. Such a deed or mortgage always requires explanation in subsequent dealings with the property whenever either of them forms a part of the chain of title, rendering the property less easy of disposition than it otherwise would be. The fact that both spouses joined in the encumbrances put on the property in this instance is, therefore, little or no evidence that the property was community rather than separate property.

The third class of lands claimed by the appellant to be community property are the lands acquired under coal land entries made by the husband during the existence of the marital relation and patented to him while the relation existed. In *Kromer v. Friday*, 10 Wash. 621, 39 Pac. 229, 32 L. R. A. 671, we held that land acquired by the husband under the homestead laws of the United States, where the entry was made, the necessary residence had, and the final proof made, during the existence of the marital relation, was community property. In subsequent cases we have applied the rule to preemption entries. On the other hand, we have held that land acquired under the stone and timber acts from the United States by the husband during the marital relation was his separate property. *Gardner v. Port Blakely Mill Co.*, 8 Wash. 1, 35 Pac. 402; *James v. James*, 51 Wash. 60, 97 Pac. 1113. The decisions were based on distinctions existing between the several acts providing the manner of entry and the persons entitled to enter. Under the homestead and preemption acts, but one entry was allowed to a family, which must be made by the head of the family, and it was required that the family live on the land and make a certain

amount of improvements thereon before final proof could be made. The land was granted ostensibly for the benefit of the family, and the intent of Congress in passing the act was to induce men with families to settle upon and make their homes upon the public lands. Under the timber land acts no settlement upon or living upon the lands was required. The entryman was required to take an oath that he had made no other application under the act; that he did not apply to purchase the land for speculation, but for his own use and benefit; and that he had not made any agreement, directly or indirectly, in any way or manner with any person or persons whomsoever by which the title he should acquire would inure to the benefit of any person other than himself. Each of the spouses could make such an entry, and there was nothing in the act itself which indicated a purpose to grant the land as a place of residence of the individual making the entry. True, after title was acquired, the entryman could make such use of it as he pleased, but it was not the primary purpose of the grant, as it was under the homestead and preemption acts, to furnish a home for the entryman and his family. These differences we thought, and still think, are fundamental, and justify the distinction made with reference to the character of the property on its acquisition.

The method of acquiring land under the coal land acts is analogous to that of the timber and stone acts and not that of the homestead and preemption acts. Each of the spouses can make an entry and acquire title under it. No residence on the land is required. The entryman must take and subscribe to an oath to the effect that the entry is made for his own benefit, and not directly or indirectly for the benefit of any other person. By analogy, therefore, the property should be held to be separate property rather than community property. But the appellant argues that this court has expressed its dissatisfaction with the decisions under the timber and stone act holding property so acquired to be separate property, and has adhered to the rule on the doctrine

of *stare decisis* rather than on principle, thinking that to disturb the earlier rule would disturb property rights acquired under it; that here there is no precedent to interfere, as this is a case of first impression in this court and the court is at liberty to adopt such rule as it thinks most agreeable with the community system of property adopted in this state. But while it is true that the first decision under the timber and stone act was by a divided court, and it may be that individual members of the court have expressed doubt as to whether the correct rule was adopted in that case, the majority of the court has always felt that the case was correct in principle, and should be adhered to on that ground rather than on the ground of *stare decisis*. By analogy, therefore, we hold that the land here in question was the separate property of the husband, and not the community property of the husband and wife.

The fourth class involve the mining claims. The laws relating to the acquisition of mines containing the precious metals are similar to those relating to the acquisition of timber and coal lands. Either spouse can make entry under them, and acquire a full title from the United States without the aid or intervention of the other, and that such property is the separate property of the locator and not the community property of the husband and wife we held in *Phoenix Min. & Mill Co. v. Scott*, 20 Wash. 48, 54 Pac. 777.

The fifth class was adjudged by the trial court to be community property, and no question concerning the correctness of the decision is suggested on the appeal.

These conclusions require an affirmance of the judgment of the court below, and such affirmance will be ordered.

DUNBAR, C. J., CHADWICK, MOUNT, PARKER, CROW, MORRIS, and GOSE, JJ. concur.