[No. 2537]

MINNIE B. BARRETT, AND HER HUSBAND, C. H. BARRETT, RESPONDENTS, *v.* F. F. FRANKE, AS ADMINISTRATOR OF THE ESTATE OF JAMES C. LOFTHOUSE, DECEASED; A. W. LOFTHOUSE, GEORGE LOFTHOUSE, RALPH LOFTHOUSE, PAUL LOFTHOUSE, CHARLES LOFTHOUSE, MRS. MARTHA EVERETT, MRS. VICTORIA TANNEHILL, AND HER HUSBAND, F. M. TANNEHILL; MRS. LOTTIE FRANKE, AND HER HUSBAND, F. F. FRANKE; LIZZIE SANFORD, AND HER HUSBAND, IRVIN SANFORD; AUGUSTINO MUSSI, JOHN MUSSI, NATHANIEL MUSSI, ET AL., APPELLANTS.

[208 Pac. 435]

1. HUSBAND AND WIFE—EQUITABLE RIGHT ACQUIRED BEFORE AND PERFECTED AFTER MARRIAGE CREATES SEPARATE AND NOT COMMUNITY PROPERTY.

In the absence of a showing that any part of the purchase price was paid with community funds, property to which one spouse acquires an equitable right before marriage is separate property, though such right is not perfected and part of the purchase price not paid until after marriage; and in any event the property would be a community only in the proportion that the purchase price is contributed by the community.

2. HUSBAND AND WIFE—SEPARATE PROPERTY PRESUMED TO RETAIN THAT CHARACTER.

The right of the spouses in their separate property is as secure as the right in their community, and, where property was once of a separate character, it is presumed to retain that character until there is some direct evidence to the contrary, and the mere fact that part of its purchase money was paid after marriage is not sufficient to show the payment was from community funds.

3. HUSBAND AND WIFE—BURDEN IS UPON PARTY CLAIMING SEPARATE OR COMMUNITY PROPERTY TO OVERTHROW PRESUMPTION OF ITS ESTABLISHED CHARACTER.

Property acquired during coverture presumably belongs to the community, the burden being on the party claiming it as separate property to overthrow this presumption and establish his claim by clear proof; and, conversely, the burden is upon the party claiming a community to show that the purchase price of property of a separate character was paid out of the community funds.

4. HUSBAND AND WIFE—PROFITS FROM SEPARATE PROPERTY MAN-
AGED BY BOTH SPOUSES BELONG TO ITS OWNER.

The profits from separate property which accrue mainly
from the property, rather than the joint efforts of a husband
and wife, or either of them, belong to the owner of the prop-
erty, although the labor and skill of both may have been
given to its management.

5. HUSBAND AND WIFE—JOINDER OF BOTH SPOUSES IN LAND CON-
TRACT NOT EVIDENCE OF COMMUNITY INTEREST.

That both spouses joined as grantors in a contract to sell
lands, which recited that payment was to be made to both,
does not estop the husband from asserting that the land is
separate property, and, since at most it merely indicates the
husband's belief or opinion as to the character of the property,
is little or no evidence of a community interest, as the char-
acter of the property is, under Rev. Laws, 2155, 2156, 2168,
and 2169, determined by the time and manner in which it is
acquired.

6. HUSBAND AND WIFE—COMMINGLING OF FUNDS SUCH AS TO ESTAB-
LISH COMMUNITY INTEREST NOT SHOWN BY THE FACT THAT
SPOUSES CARRIED JOINT BANK ACCOUNT.

The mere fact that their bank account is carried in the
name of both spouses is not sufficient to show a commingling
of funds such as to establish the character of real estate as
either separate or community property, where it was paid for
by drawing on the bank account.

7. HUSBAND AND WIFE—PROCEEDS FROM SALE OF LAND PURCHASED
BEFORE, AND PAID FOR PARTLY AFTER, MARRIAGE, HELD NOT TO
BE COMMUNITY FUNDS.

A husband initiated a right to acquire land and made part
payment thereon prior to marriage and acquired complete
title to and sold the land during coverture, and also during
coverture purchased two tracts of land for the payment for
which moneys received from the sale of the first tract were
applied. There was no evidence that community funds or
separate funds of the wife or their commingled funds entered
into the payment of the two tracts, other than that the wife
rendered the husband household services when living upon
the tract sold, and no evidence of profits from this land while
jointly managed by husband and wife. *Held*, that the two
tracts were the husband's separate property, notwithstanding
both spouses joined in the agreement to sell the first tract
and the wife assisted in its management, since the wife had
not discharged the burden of showing that property separate
in character was paid for with community or her separate
funds.

APPEAL from the Eighth Judicial District Court,
Churchill County; *Thomas F. Moran,* Judge.

Action to quiet title by Minnie B. Barrett and C. H. Barrett, her husband, against F. F. Franke, administrator, and others. From a judgment and order overruling motion for new trial, defendants appeal. **Reversed and remanded.**

*A. L. Haight,* for Appellants:

The property in controversy became the separate property of James C. Lofthouse through the initiation of the title thereto by him prior to his marriage, in the absence of a showing that community funds were employed in its purchase. "As a general rule, the character of title to property as separate or community depends upon the existence or nonexistence of the marriage at the time of the incipiency of the right by virtue of which the title is finally extended." 5 R. C. L. 833. "Property purchased by a contract entered into before marriage, but not fully paid for until after marriage, will generally be separate property, especially where the balance due is not paid for with community funds." 21 Cyc. 1641.

To show any community interest in the property, the burden is on the plaintiffs to affirmatively prove that the payments made on the purchase price during coverture were made with community funds. Medlenka v. Downing, 59 Tex. 32; McDougal v. Bradford, 80 Tex. 558; Morgan v. Lones, 22 Pac. 253.

The property having been purchased with a portion of the proceeds of Lofthouse's separate property, it became his separate property, continued so to be until the time of his death, and thereupon descended to his heirs at law. In Re Pepper's Estate, 112 Pac. 62.

*Cooke, French & Stoddard,* for Respondents:

The property of J. C. Lofthouse in controversy was community property, and the judgment of the lower court should be affirmed. It was acquired after marriage, and before divorce, and is therefore prima facie community property. Rev. Laws, 2156; In Re Williams Estate, 161 Pac. 741; Hill v. Gardner, 77 Pac. 808. It

is not necessary to prove that property is the product of the joint effort of husband and wife; if it is acquired after marriage, it belongs to the community. Lake v. Bender, 18 Nev. 361, 4 Pac. 711. A deed to either spouse during the coverture presumptively makes community property. 21 Cyc. 1645. In cases of doubt, the presumption is always in favor of property being community property. 21 Cyc. 1650.; Meyer v. Kinzer, 12 Cal. 247; Cooke v. Bremond, 86 Tex. 636.

There was a voluntary commingling of separate with community funds. Dimmick v. Dimmick, 30 Pac. 547; In Re Buchanan's Estate, 154 Pac. 129. "Funds belonging to either party individually, on marriage, when commingled with community property so that they cannot be traced and segregated therefrom, become community estate." Reid v. Reid, 44 Pac. 564; Brown v. Lockhart, 71 Pac. 1086; Ballinger on Community Property, sec. 167; In Re Warner's Estate, 140 Pac. 583; Laws v. Ross, 194 Pac. 465.

In the absence of a showing as to the nature or extent of an interest, equity will presume it was an equal interest, because it is a favorite maxim of equity that "equity presumes an equality of interest." 21 C. J. 206–209. Tenants in common are presumed to hold an equal interest when deed or other title paper to them is silent as to the extent of their interests. 38 Cyc. 74; Keuper v. Mette, 88 N. E. 218; In Re McConnell, 197 Fed. 438; Campau v. Campau, 5 N. W. 1062; Tuppela v. Mining Co., 267 Fed. 753; Commonwealth v. Bracken, 32 S. W. 609; Johnson v. Jackson, 114 S. W. 260; 30 Cyc. 693.

Joint deposit of moneys in bank is tacit admission that such moneys belonged to husband and wife in equal shares; it is a strong circumstance indicating joint ownership. 7 C. J. 640; O'Connor v. Dunnigan, 143 N. Y. S. 383. Joint deposit payable to either party, with possession of pass-book, is strong evidence of ownership of interest in deposit in the party having possession of pass-book. 3 R. C. L. 155; Mack v. Bank, 50 Hun, 477; Metropolitan Bank v. Murphy, 31 L. R. A. 454.

By the Court, DUCKER, J.:

This is an action to quiet title to three tracts of land situate in Churchill County, Nevada.

The trial court found that the respondent Minnie B. Barrett was the owner, in the possession, and entitled to the possession, of an undivided half-interest in two of said tracts of land, and of an undivided $82/100$ interest in one of said tracts. Judgment was entered accordingly. From the judgment and an order overruling a motion for a new trial, this appeal is taken.

Respondent Minnie B. Barrett was formerly the wife of said James C. Lofthouse. They intermarried November 8, 1908, and were divorced December 1, 1916. The question presented to the trial court for determination was whether the property involved was community or separate property, and it was on the ground that the property belonged to the community that the foregoing finding was made. Is the evidence sufficient to support the finding?

Prior to his marriage and on July 9, 1907, James C. Lofthouse entered into a written agreement with one Warren W. Williams, for the purchase of property known as the Moore ranch, for the price of $8,766, payable in annual installments of $1,461 plus interest; the first installment being payable on the 2d day of January, 1908. Thereafter, on March 31, 1910, Williams executed a deed granting the property to Lofthouse. On April 1, 1910, Lofthouse and his wife entered into a written agreement with one Moore for the sale of this property for the sum of $20,000, the last installment of which was paid June 1, 1911. Subsequently, and prior to the divorce, two of the tracts of land affected by this action were purchased. James C. Lofthouse died intestate February 15, 1918, without having parted with title to the lands affected by this action. The necessary conclusion to be drawn from the facts stated is that Lofthouse initiated a right to acquire the Moore ranch previous to his marriage by his contract with Williams,

which was developed into a complete title subsequently to his marriage.

It is contended by counsel for appellants that, as the title to this property was initiated before marriage, and that as the evidence fails to disclose that any community funds, or separate funds of the wife, were used in its purchase, it was therefore the separate property of the husband. He further contends that, as the evidence shows that after the balance due Williams on the purchase price of the property had been discharged, certain of the moneys received from Mr. Moore on account of the sale of the Moore ranch were invested by Lofthouse in two of the tracts of land involved in this action, such property thereby became his separate property, which, upon his death, vested in his heirs at law. As to the third tract, it is contended that, as title to it was initiated prior to his marriage, it falls within the rule stated in the first contention, and is therefore separate property.

1. We are of the opinion that the rule of law asserted is well established and is applicable to the facts of this case It is thus stated in 5 R. C. L. 834:

"Property to which one spouse has acquired an equitable right before marriage is separate property, though such right is not perfected until after marriage. Thus property purchased by one spouse before marriage is separate property though the deed therefor is not executed and delivered until after marriage, and this is true although a part of the purchase price is not paid until after marriage, in the absence of a showing that any part of the balance was paid with community funds. In any event it would be community property only to the extent and in the proportion that the purchase price is contributed by the community."

In Guye v. Guye, 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N.S.) 186, the husband had acquired an equitable interest in a lot of land prior to his marriage. A deed to this property was executed to him nearly one

year after his marriage. The appellant, his surviving wife, based her claim of a community in the land on the fact that the deed to the same passed after her marriage with Guye, and the presumption arising from the manner in which business is ordinarily conducted that the purchase price was paid at the time the deed was delivered. The court was of the opinion that the evidence showed that some part of the purchase price had been paid prior to marriage, and stated that had it been shown that the balance of the purchase price had been paid with community funds after the marriage, and it might well be that under the doctrine of former rulings of the court, the property would have been community property "to the extent and in the proportion that the consideration is furnished by the community, the spouse supplying the separate funds having a separate interest in the property in proportion to the amount of his or her investment"; but clearly the entire property could not be community property. "But," said the court, "there is no evidence in the record that community funds entered into the purchase price of the property. Therefore, for the want of some rule with which to measure such interest, if for no other, the court cannot hold that the community had any interest in this property."

2. Speaking of the degree of proof necessary in such cases, the court said:

"Moreover, the right of the spouses in their separate property is as sacred as is the right in their community property, and when it is once made to appear that property was once of a separate character, it will be presumed that it maintains that character until some direct evidence to the contrary is made to appear."

In Medlenka v. Downing, 59 Tex. 33, it was held that the fact that a portion of the purchase money for the land in question was paid after a second marriage was not sufficient evidence that the money so paid was the community property of the parties to the second marriage.

3. This court, in Lake v. Bender, 18 Nev. 361, 4 Pac.

711, 7 Pac. 74, laid down the rule that property acquired during coverture presumably belongs to the community; the burden being on the party claiming it as separate property to overthrow this presumption and establish this claim by clear and satisfactory proof. We perceive no sound reason why the same rule of evidence should not be applied when a party undertakes to show that the purchase price of property of a separate character was paid out of community funds. Examining the evidence in the light of this rule, it does not appear that any community funds, or separate funds of the wife, were used in the purchase of the Moore ranch.

It appears from the evidence that shortly after her marriage, the respondent Mrs. Barrett had about $875, which was her separate property. Soon after the marriage she and her husband moved to the Moore ranch, and she remained there for about two years. She did the cooking and housework and other general work, and raised chickens and turkeys and made butter. Later on they moved to another smaller ranch, where she did about the same character of work. From this place they moved into the town of Fallon, and she kept roomers and boarders.

4. It is the contention of respondents that the profits from farming the Moore ranch were largely the fruits of Mrs. Barrett's labor, and were used in paying the purchase price of the property. In Lake v. Bender, supra, this court held that the profits of separate property which accrued mainly from the property, rather than the joint efforts of a husband and wife, or either of them, belong to the owner of the property, although the labor and skill of both may have been given to the business. It is unnecessary to determine what effect this principle could have in this case, for there is not evidence that there were any profits from the Moore ranch during the time the husband and wife were managing the property and before full payment was made to Williams. Hay was raised on the ranch, and it appears that there is a credit on the purchase price

by hay in the sum of $546.70. But this credit was given only four days after the marriage. There is also a credit made January 18, 1908, by a mortgage taken from one Paul Lofthouse on his house for the sum of $1,000. It is urged by respondents that this was a loan by Paul Lofthouse to James C. Lofthouse and was subsequently repaid to the former from community funds. There is no substantial evidence upon which to base this contention. The nature of the transaction is entirely speculative. The fact established, however, is that it was a payment on the purchase price before marriage. As a matter of fact, the major part of the purchase price to Williams and interest thereon in the sum of $7,562.51 was paid on June 4, 1910, and out of the proceeds of the sale of the property to Moore. There is no evidence that the moneys belonging to Mrs. Barrett were used in paying for the property. The only evidence as to the use of the latter funds is found in the testimony of Mrs. Barrett's mother. When asked concerning the disposition of these moneys, she said: "She bought stuff for the house, and clothes, and one thing another."

5. The lower court, as appears from its written decision, which we find in the record, was of opinion that certain matters contained in the agreement for the sale of the Moore ranch to Moore strongly tend to show that Lofthouse recognized that the property affected by the agreement was community property. Respondents also stress this point. The recitals in the agreement which they claim have this effect are, substantially, that the husband and wife joined in the agreement to sell; that payment was to be made to both parties; that deposit of money to the credit of the parties of the first part or either of them shall be equivalent to the payment of any installments; that said parties of the first part agree to pay all taxes and assessments that shall be taxed or assessed on said premises; that in case of default in payments, "all previous installments shall be and remain the property of the said first parties"; that

if the parties of the first part fail in certain respects enumerated in the contract, or if their title prove incumbered or otherwise not marketable, the party of the second part may recover any and all installments paid or may sue for specific performance, or for perfect title or for damages.    Counsel for respondents argue this point at length, and earnestly contend that the clauses mentioned are of great weight, and might well be held to constitute an estoppel.    They do not, in our opinion, include the necessary elements of estoppel, and as evidence are of little, if any, force.    It is not unusual—in fact, it is the general rule—for a purchaser of property to require both spouses to join in the conveyance or contract of sale.    Any careful lawyer or conveyancer will advise such a requirement to a prospective purchaser, regardless of whether the property affected is community or separate.

The effect of such a transaction as bearing upon the character of property, whether community or separate, was under consideration in Guye v. Guye, supra, and upon the question the court said:

"Nor do we think the fact that the spouses have joined in mortgaging property sufficient evidence on which to found a claim that the property mortgaged is community property.    While the statute allows a husband or wife to sell and encumber his or her separate property, yet no prudent purchaser or mortgagee will ever take the separate deed or mortgage of a married man or married woman even when the other spouse sits by and disclaims interest.    Such a deed or mortgage always requires explanation in subsequent dealings with the property whenever either of them forms a part of the chain of title, rendering the property less easy of disposition than it otherwise would be.    The fact that both spouses joined in the encumbrances put on the property in this instance is, therefore, little or no evidence that the property was community rather than separate property."

Respondents do not contend that the recitals of the agreement or other evidence show a gift of the husband to the community, but, as previously stated, maintain that the recitals show a recognition by him of her interest in the property. We cannot say that these recitals amount to such a recognition. At the most they merely indicate his belief or opinion as to the character of the property. The opinion of either spouse as to whether property is separate or community is of no weight whatever. Its character, in these respects, is determined by the time and manner in which it is acquired. Sections 2155, 2156, 2168, 2169, Revised Laws of Nevada. On the effect of the opinion of a spouse as evidence of the separate or community character of the property, the court, in Re Pepper's Estate, 158 Cal. 619, 112 Pac. 62, 31 L. R. A. (N.S.) 1092, said:

"Whether the property was community or separate, was a question of law, depending on the manner and time of its acquisition. The opinion of Pepper [the husband] on this legal question was entitled to no weight."

6. The evidence does not disclose any commingling of funds, as insisted by respondents. Mrs. Barrett's separate funds were disposed of in the manner heretofore indicated, as shown by the testimony of her mother, and the mere fact that the account with the Churchill County Bank was carried in the name of Mr. and Mrs. J. C. Lofthouse is not sufficient to sustain this contention. It appears that the wife sometimes paid the men who worked upon the ranch, and this manner of carrying the account in the bank is entirely consistent with the theory that it was for the convenience of both parties in checking upon the account.

7. A portion of the proceeds of the Moore ranch are clearly traceable to and constitute the full purchase price of two of the tracts of land affected by this action. As the Moore ranch was the separate property of J. C. Lofthouse, these two tracts of land therefore, under a

well-established principle, also became his separate property. The third piece of land involved was the separate property of J. C. Lofthouse, for the same reasons given as to the Moore ranch. Title to it was initiated by Lofthouse prior to his marriage, by a contract of sale. Part of the purchase price was also paid before marriage, and there is no evidence that any separate funds of the wife or any community funds were used to complete the purchase.

The judgment of the lower court is reversed, and the case remanded.