JEAN LAING CARTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

L. L. CARTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27918, 27919. Promulgated December 13, 1951.

*Stanley Pedder*, Esq., for the petitioners.
*Robert G. Harless*, Esq., for the respondent.

**OPINION.**

TURNER, *Judge:* The respondent's determination that the petitioner realized income upon receipt of payments from the Fund in an amount equal to the excess of the total of the amounts received by him over the amounts which he had deposited and that the income so received was ordinary income, was in our opinion a sound and proper determination. The parties are agreed that the Fund was not an employees' trust, within the provisions of section 165 of the Internal Revenue Code, and that the payments made by the petitioner to the Fund over the years did not constitute the purchase of an annuity within the meaning of the Code.

The Fund was very carefully planned and set up. It was divided into two parts: Under one, the employee could indulge in a voluntary savings program, and under the other, the employer, on the basis of the continued employment of the employee, made matching or greater deposits to the Fund under the employee's name. To each of these deposits were added periodically the earnings thereon. None of the amounts deposited in or earned by the fund standing in the name of an employee could be withdrawn so long as the employee continued in the service of his employer and the employee could not assign or pledge his interest therein. But upon retirement, as in the case of this petitioner, the total of the amounts standing to his credit became payable to him in five annual installments, the first of which was earmarked by the regulations of the Fund as a repayment of the amounts which he had deposited. Such being the facts, we think it abundantly clear that the amounts received by the petitioner in 1943, 1944, and 1945 were amounts over and above his deposits which had already been repaid, and were (1) the earnings which had accrued upon the amounts deposited by him, (2) the amounts paid into the Fund in petitioner's behalf by his employer on the basis of his services to such employer, and (3) the earnings on the deposits so made by the employer, all of which constituted ordinary income to him when so received.

The contentions of the petitioner (1) that the deposits and earnings having irrevocably accrued to the Fund account in his name in years prior to the taxable years herein, were thereafter capital belonging to him and constituted his basis for determining the gain, if any, thereafter realized by him from the Fund, and (2) that his with-

drawals from the Fund in the years here involved were, for the purposes of applying section 117 of the Code, exchanges or sales of capital assets and any gain which might have been realized was capital gain, are in our opinion wholly without merit. In the first place, there is no claim or showing that the petitioner kept and maintained any books of account, to the end that he might have properly reported his income on an accrual basis, rather than a cash basis. There is accordingly no basis of record for any conclusion other than that he regularly and properly reported his income on the cash basis. In the second place, at no time prior to the dates of payment herein could the petitioner have received or realized on the moneys here in question, since to have done so would have been a violation of the prohibition against the ceding or pledging by an employee of his interest in the Fund, and such violation would have made the eventual payment of any amount in excess of the employee's own deposits, plus accrued interest thereon, discretionary with the board of administrators. Compare *E. T. Sproull*, 16 T. C. 244, wherein there was no bar to assignment. The petitioner's employment with Shell continued until 1941, and in that year, for the first time, he became entitled to receive payments of the deposits and earnings according to the plan of the Fund, as set forth in its regulations, and being on the cash basis, as we have concluded above, he realized taxable gain in the years of payment when the amounts received by him exceeded the total of his deposits. Finally, the payment to him by the Fund of the amounts to his credit in no way partook of the nature of a sale or exchange of capital assets.

The respondent determined that of the $8,035.96 paid by Carter to the Fund, $4,367 was paid between the time he became a member in 1915 and the end of 1927, that the remainder, or $3,668.96, was paid during the years 1928 through 1935, that the payments to the end of 1927 were to be regarded as from his separate property and those thereafter from community property, and that of the amounts received by him during the years 1942 through 1945 the part thereof equal to the proportion that the payments made to the end of 1927 bore to the total payments constituted his separate income and the balance was community income. Taking the position that at all times after his marriage in 1916 Carter's payments were made with community property, the petitioners contend that the entire amounts received by him during the years 1942 through 1945 constituted community income. Carter testified that during the years 1915 to 1936 he made payments "representing a percentage of" his salary to the Fund. Since the parties have grounded their arguments on the basis that the payments were from his salary and since there is no other evidence bearing on the point, we accept the interpretation placed on his testimony by the parties.

As pointed out in *Devlin* v. *Commissioner*, 82 F. 2d 731, prior to July 29, 1927, when the community property law of California was changed so as to give a present one-half interest in community property to the wife, the earnings of a husband in that state had substantially all the characteristics of separate property and were taxable to the husband. The change in the law made in 1927 was prospective in effect and does not apply to the earnings of a husband prior to the date of change nor to property acquired prior thereto, nor to the income from such property. *Rogan* v. *Delaney*, 110 F. 2d 336, certiorari denied, 311 U. S. 660; *Sara R. Preston*, 35 B. T. A. 312. In view of that state of the law, it is apparent that receipts from the Fund during 1942 through 1945 attributable to payments to the Fund to July 29, 1927, were taxable to Carter as his separate income.

The petitioners contend that if it be held that only a portion of the payments received by Carter during 1942 through 1945 was taxable as community income, then it should be held that the amount of $4,106.36 shown by the evidence to have been paid to the Fund up to June 30, 1927, is to be used in arriving at the percentage so taxable instead of the amount of $4,367 at December 31, 1927, as employed by the respondent, and that this would result in 48.9 per cent of such receipts being allocated to community income. Accepting the amount of Carter's payments to June 30, 1927, as shown by the evidence, as more accurately reflecting the total of his payments to July 29, 1927, than the amount thereof at December 31, 1927, the respondent, on brief, concedes that 48.9 per cent of the payments received from the Fund by Carter during 1942 through 1945 was taxable as community income. Since the parties are thus in agreement on the percentage of the receipts that constituted community income, the remainder or 51.1 per cent will be treated as Carter's separate income in a recomputation of the deficiencies.

On some undisclosed date during the 1920's, L. L. Carter was granted a patent which in 1942 was adjudicated to have been anticipated by a prior patent or patents. To June 1935, he had incurred expenses of $2,352.55 for legal services rendered in connection with investigations of reported infringements and related matters. A substantial portion of the expenses was paid prior to June 1935, and the balance was paid subsequent thereto but prior to 1942. In June 1935, and for a portion of its stock, he transferred his rights of action on such reported infringements to a corporation which thereafter financed and prosecuted suits for infringements of the patent until the above-mentioned adjudication in 1942. Determining that the expenses in question represented cost to Carter of the stock he acquired in the corporation, and that the stock became worthless in 1942, the respondent disallowed a deduction of the expenses as taken by the

petitioners as an ordinary loss and allowed instead a loss on a capital asset.

The evidence shows, and the respondent concedes, that the expenses were not considered in the determination of the amount of corporate stock Carter received in return for transferring his rights of action. Despite the fact that they were not so considered it seems apparent that whatever benefit that had resulted to Carter from the investigations and other related work either passed to the corporation when he transferred his rights of action to it or such benefit ceased to exist at that time. Obviously the corporation, as a result of the investigations and the related work that had been done, was in a much more advantageous position to proceed than would have been the case otherwise. It obtained that advantage when it acquired the rights of action. Consequently, we think it must be concluded that such benefits as resulted to Carter from the expenditures constituted a part of his cost of his stock in the corporation. The stock became worthless when it was adjudicated that no recovery could be had on the suits and the corporation was dissolved without assets. Both these events occurred in 1942. In such circumstances, the respondent's action in disallowing the claimed loss as an ordinary loss and allowing it as a capital loss was in accord with the requirements of section 23 (g) (2) of the Internal Revenue Code and will not be disturbed.

The remaining issue relates to the respondent's action in determining the amounts allowable as medical expenses for 1942 through 1944. The parties state that they are in agreement as to the amounts expended during those years for medical expenses, that no controversy exists between them as to the application of the statute, and that the only question involved under this issue is the correct amount of the income of the petitioners for the respective years. Since that question will be disposed of in a recomputation of the deficiencies under our determinations of the issues heretofore considered, there does not appear to be any question under this issue for us to decide.

*Decisions will be entered under Rule 50.*