W. F. AND EDNA M. WILLIAMS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2916–66.    Filed December 11, 1968.

*W. F. Williams*, pro se.
*Sheldon M. Sisson*, for the respondent.

#### OPINION

MULRONEY, *Judge:* Respondent determined a deficiency in the petitioners' income tax for 1964 in the amount of $91.23.

The issue here involves the proper apportionment of retirement income credit and the community property consequences with respect to that credit and civil service retirement annuity income.

All of the facts have been stipulated and they are so found.

Walter F. and Edna M. Williams, husband and wife, had their legal residence in Yuma, Ariz., at the time they filed their petition herein. They filed a joint income tax return for 1964 with the district director of internal revenue at Phoenix, Ariz. Walter will hereinafter be called the petitioner.

Petitioner, a retired civil service employee, was approximately 55 years of age at the time of his retirement on October 31, 1960. At that time he had 30 years and 9 months of Federal service. Out of this total time of Federal service petitioner lived with his wife and performed his official duties in community property States for 65 months. They were domiciled in Arizona at the time of his retirement.

Petitioner reported retirement pay in the amount of $4,572 in the joint income tax return for 1964 filed by him and his wife. In computing the retirement income credit, petitioner attributed one-half of the retirement pay, or $2,286, to his wife, which resulted in a credit of $168.96 attributed to the wife's portion of the retirement pay and a credit of $168.96 attributed to the petitioner's portion, or a total retirement income credit of $337.92 for 1964.

Section 37 of the Internal Revenue Code of 1954 [1] allows a limited credit against income tax in the case of an individual who receives retirement income as defined in subsection (c) and who meets the eligibility requirements of subsection (b). Subsection (d) limits the amount of the retirement income of an individual that can be used in computing the credit to "$1,524 less" certain other payments. When a joint return is filed, the retirement income credit of each spouse eligible for such credit is separately computed. Sec. 1.37–1(d), Income Tax Regs. The regulations further provide that "If retirement income constitutes a community income under community property laws applicable to such income, the retirement income credit of each spouse shall be separately computed by taking into account one-half of such amounts." Sec. 1.37–1(e), Income Tax Regs.

Petitioner argues the separate or community property character of the civil service retirement income is determined by the marital status and domicile at the time he receives the income itself. It is his contention that all of the retirement income is community property because he acquired or earned it on his last working day when he was married and domiciled in Arizona, a community property State. He therefore contends the wife's retirement income credit was correctly computed on one-half of the retirement annuity income.

Respondent determined that only about 20 percent of the retirement annuity was community income and only one-half of that portion can be considered earned by the wife in computing her retirement income credit. Respondent's basic argument is that civil service retirement income is acquired over a period of time which represents service, therefore, it is the marital status and domicile of the petitioner during that period that determines whether the retirement pay is separate or community income. Thus it is his position that the civil service annuity contains separate and community property portions based on an allocation of his Government services on a time basis between services while domiciled and working in community and separate property States. This would mean that in the instant case where it is stipulated the married employee was domiciled in a community property State for roughly 20 percent

---

[1] All section references will be to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

of his more than 30 years of Federal service the annuity income would be divided into approximately 20-percent community property and the balance separate property of the employee.

Section 72(a) provides that "gross income includes any amount received as an annuity * * * under an annuity, endowment, or life insurance contract." We must determine what portion of the retirement income is community property and what portion is separate property in order to determine the retirement income credit of each. Since there are no specific Federal statutes in this area, the classification of property as separate or community is to be determined under the laws of the local jurisdiction. *Buchaser* v. *Buchaser*, 231 U.S. 157 (1913). The question is a little more graphically stated if we ask: What portion of the retirement annuity would, under general community property law, be includable in the wife's gross income if she filed an individual tax return?

Under the Arizona community property law "All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, or earned by the wife and her minor children while she lives separate and apart from her husband, is the community property of the husband and wife." Ariz. Rev. Stat. Ann. sec. 25–211A.

Arizona community property law is much like that law of the State of Washington which, in turn, borrowed its community property law from the State of California. *Goodell* v. *Koch*, 282 U.S. 118 (1930), *Porter* v. *Porter*, 67 Ariz. 273, 195 P. 2d 132 (1948); and 1 de Funiak, Principles of Community Property 101 (1943).

An analysis of cases involving community property law clearly shows that marital status and domicile in community and noncommunity property States are the factors which determine whether the income is community property or not.

Under California law separate property acquired by a husband while domiciled in a noncommunity property State retains its character as separate property when he and his wife move to a community property State. *In Re Bruggemeyer's Estate*, 115 Cal. App. 525, 2 P. 2d 534 (1931).

Also, the earnings of a husband who is domiciled in California are community income even though the services for which such earnings are received were performed in a noncommunity property State. *Gallagher* v. *United States*, 66 F. Supp. 743 (N.D.Cal. 1946). In contrast, the earnings of a husband who is domiciled in a noncommunity property State are separate income of the husband even though they are derived from the performance of services in a community property State. *Shilkret* v. *Helvering*, 138 F. 2d 925 (C.A.D.C. 1943).

Generally it can be said that each spouse's interest in a pension or a retirement annuity is treated as "property" within the meaning of that term in community property statutes. *Crossan* v. *Crossan*, 35 Cal. App. 2d 39, 94 P. 2d 609 (1939). Indeed, petitioner's treatment of the retirement annuity concedes it is subject to community ownership. The only issue is the extent of each spouse's interest in the retirement annuity.

Petitioner is wrong in his argument that merely because the annuity became payable when the community was domiciled in a community property State each spouse has a half interest in the retirement annuity. The retirement annuity is in the nature of deferred or added compensation for services performed. It results from services performed and contributions made over a period of years. If the services were all performed while the community was domiciled in a community property State and the contributions were made from community income then all of the retirement income would be community property. *Herring* v. *Blakely*, 385 S.W. 2d 843 (Tex. 1965). So, too, if all of the services were performed and contributions made while the community was not domiciled in a community property State, the retirement annuity would be the separate property of the employee.

This is also the result when the services were all performed and contributions made before marriage. [2]

The fact that a *fund* exists to which petitioner made contributions throughout his entire Federal service and that *certain rights* in respect to that fund accrued to him during that same period, illustrates that petitioner was acquiring and, in fact, "acquired" an interest throughout his entire period of service and not after it. But for his contributions and service there would be no retirement income. Any income he receives is in recognition of service and contributions he made to the fund over a period of time and represents "earnings." [3]

It is obvious that under general principles of community property there must be some apportionment. There is authority for apportioning to determine community property interests in somewhat similar situations. When property is purchased before marriage and part of the purchase price paid is paid before marriage and part from community earnings after marriage the property is community property

---

[2] See 15 Am. Jur. 2d, Community Property, sec. 46, where it is stated: "It is often declared that a pension earned before marriage, even if not paid until after marriage, is the separate property of the person 'earning' the pension."

[3] See 1 de Funiak, Principles of Community Property, sec. 75, pp. 195–196 (1943): "Even though the employee may not have a property or contract right in the fund and the right to the pension cannot accrue until the happening of the event or events upon which payment of the pension is contingent, his interest, such as it is, is a community asset if the money he paid into the fund represented community funds. When he does receive the pension the amount payable represents earnings."

to the extent and in the proportion that the purchase price is contributed by the community. *Vieux* v. *Vieux*, 80 Cal. App. 222, 251 P. 640 (1926) ; *Barrett* v. *Frank*, 46 Nev. 170, 208 P. 435 (1922) ; *Guye* v. *Guye*, 63 Wash. 340, 115 P. 731 (1911).

It has been held that a life insurance policy is community property and where the insurance premiums of such a policy are paid by the husband insured both before and after marriage the proceeds are community and separate in proportion to the ratio of separate and community funds used to pay the premiums. *Modern Woodman of America* v. *Gray*, 113 Cal. App. 729, 299 P. 754 (1931), *Gettman* v. *City of Los Angeles*, 87 Cal. App. 2d 862, 197 P. 2d 817 (1948).

Somewhat in point is the case of *Baselt* v. *Baselt*, 37 Wash. 2d 461, 224 P. 2d 631 (1950). There the court held that a Government retirement pension to which a husband would not become entitled until he retired, which would not occur for 7 more years, was part of the community property subject to division in divorce action.[4]

The California statute enacted in 1929 changed the wife's rights in community property from a mere expectancy, not includable in her separate income, to a present interest that would be includable in her separate income. In *Jean Laing Carter*, 17 T.C. 994 (1951), the issue was how much of a contributory pension fund payable to a California community which had its inception in the performance of services both before and after the 1929 change in the law, was includable in the wife's income. Since approximately 48 percent of the entire amount contributed was contributed after the 1929 change we held receipts from the pension fund had to be apportioned on the basis of approximately 48 percent being community property.

As we have stated there must be some apportionment in a situation like the instant case in order to determine the correct amount of the retirement annuity income that would be includable in the wife's estate. There remains the plan or method of apportionment that will best accord with general principles of community property law.

Because those services and contributions took place in community and noncommunity property States it is only reasonable to apportion the income based on the length of service in community and noncommunity property States. The retirement income represents a community asset only to the extent that the money he paid into the fund represents community funds, and the only period of time the funds represented community funds was the time he spent married and

---

[4] A Federal District Court applying California law held that income in the nature of deferred compensation paid from a contributory pension fund to a retired married employee who performed services in a noncommunity property State and changed his domicile to California after retirement is separate income of the employee. *Asher* v. *Welch*, an unreported case (S.D. Cal. 1938, 24 A.F.T.R. 1091, 39–1 U.S.T.C. par. 9279).

domiciled in community property States. The income petitioner now receives represents "earnings" earned or acquired throughout his entire period of service and not solely on his last working day.

This apportionment is in accord with general community property principles. It gives the community the fruits of the services performed and contributions made while domiciled in the community property State. To hold as petitioner contends would give the community income that was *earned* when the community was domiciled in a separate property State. The full sweep of petitioner's contention would also mean that a taxpayer who was married and domiciled in a community property State throughout most of his career and then moved to a noncommunity property State just before he retired would not be able to split his retirement income with his wife for purposes of section 37.

Petitioner cites *Charles R. Wilkerson*, 44 T.C. 718 (1965), affirmed per curiam 368 F. 2d 552 (C.A. 9, 1966), in support of his position. There are significant differences between that case and the instant one which readily distinguish it. In the *Wilkerson* case, we held that all of the retirement pay of a married serviceman who became domiciled in Arizona a few months before the date of his retirement after 30 years of service was community property. We held there should be no apportionment even though part of his 30 years of service was performed while he was unmarried or stationed in separate property States. The soldier's pension does not represent additional compensation for past services. In the course of the opinion we stated "The source of retirement pay of a serviceman is not some fund to which he has made contribution" and "The serviceman gains no right to receive anything until he serves the full 30 years." Neither one of these conditions exists in the instant case. Here there is a fund to which the petitioner has made contributions and he does gain a right to receive certain things before he has completed his service and retires.[5]

Petitioner argues in the alternative that even if the character of the retirement income is found to be in part separate property it should be stamped all community income because it then would consist of commingled funds. We find no basis for this conclusion. Petitioner cites *Rundle* v. *Winters*, 38 Ariz. 239, 298 P. 929 (1931), as a basis for

---

[5] For example:

An employee may retire at any time because of disability after only 5 years of service (5 U.S.C. sec. 8337).

After only 5 years if an employee is separated from the service he is entitled to an annuity at age 62 (5 U.S.C. sec. 8338).

If an employee dies after only 5 years of service, an annuity is payable to his wife and to surviving children (5 U.S.C. sec. 8341(d) and (e)).

If an employee dies prior to retirement a lump-sum death benefit is payable to certain persons (5 U.S.C. sec. 8342).

his argument. That case simply states the general rule that a rebuttable presumption arises, when separate and community funds are commingled, that all of the funds are community property. But this general rule is only applied when separate and community funds are so confused and blended that the separate property cannot be identified. See *Porter* v. *Porter*, 67 Ariz. 273, 195 P. 2d 132 (1948). That is not the case here. The separate property can be easily identified.

We hold the retirement annuity is community property in the proportion that the domicile of the community in a community property State bears to petitioner's entire period of Federal service. The retirement income credit should be computed on this apportionment of the retirement annuity income. We understand from the briefs that respondent's determination of deficiency in this case results in a retirement income credit that is a few dollars more than what the correct result based on the stipulated facts would be and therefore the tax deficiency determined is a few dollars less than what would be the correct sum. Respondent states he seeks no increased deficiency, so decision will be entered for the respondent on the deficiency determined.

*Decision will be entered for the respondent.*