Margaret A. Reeve v. Commissioner.
Reeve v. Commissioner
Docket No. 7708.
United States Tax Court
1947 Tax Ct. Memo LEXIS 263; 6 T.C.M. (CCH) 329; T.C.M. (RIA) 47074; March 27, 1947
*263 Nathan Moran, Esq., 41 Sutter St., San Francisco 4, Calif., for the petitioner. Wilford H. Payne, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in petitioner's income tax for the calendar year 1941 in the amount of $4,114.51. The primary legal question at issue is whether certain property owned by petitioner before her marriage was effectively transmuted to community property by agreement between petitioner and her husband. A minor issue involves the question whether all, none, or only one-half of a distribution made by a corporation, of which petitioner was a stockholder, was taxable income of petitioner in 1941. Findings of Fact Petitioner is an individual who filed her income tax return for 1941 with the collector of internal revenue at San Francisco, Calif.
She is the daughter of C. J. Sebastian, a long time resident of Seattle, Washington, which was also petitioner's residence and domicile until her marriage in 1941. C. J. Sebastian was, during all the years involved here, president, manager and controlling stockholder of Sebastian-Stuart Fish Co., a corporation engaged in the wholesale *264 distribution of fish and fish products, with its place of business in Seattle. The Washington Biological Laboratories, Inc., was a corporation organized in September 1, 1940, to engage in the business of manufacturing and selling vitamin oils and other fish by-products. The Sebastian-Stuart Fish Co. did business, including the sale of fish liver, with the Washington Biological Laboratories. From time to time the Sebastian-Stuart Fish Co. made advances, or investments of money, to or in the Washington Biological Laboratories, and the latter corporation issued stock totaling 1,000 shares, and some notes, to the Fish Company. At some time shortly before the formation of the limited partnership hereinafter described, Mr. Sebastian, as president of the Fish Company, caused the Sebastian-Stuart Fish Co. to transfer the 1,000 shares of stock, together with the notes, to his daughter, Margaret, petitioner herein, who was then 21 years old, a student in a California college, and who then had no money or property of any kind of her own. On March 28, 1941, a limited partnership was formed for the purpose of succeeding to the business of the Washington Biological Laboratories, Inc. Because *265 she held the stock hereinbefore referred to, petitioner became entitled to participate in the successor partnership as a limited partner, upon the contribution by her of $7,000. She thereupon became entitled to 17 1/2% of the partnership profits, with limited liability for losses. Since petitioner had no money her father suggested she execute a power of attorney giving him the power to represent her in all matters relating to the proposed transaction, which she did. He thereupon arranged to borrow the $7,000 required for her contribution from a bank, executing on her behalf a note which he also endorsed individually. He made the partnership contribution with the proceeds of that loan, and executed on her behalf the articles of limited partnership. The share of the profits of the partnership credited to petitioner's account in 1941 amounted to $22,118.83. Of this withdrawals were made totaling $6,604.55. This amount was distributed by periodical checks drawn to petitioner's order in her maiden name, and sent to her father. He also received on her behalf in June 1941, an item of $572.92 which was a liquidating dividend on the stock of the corporation which preceded the partnership, so *266 that he received a total during 1941 of $7,177.47. He paid off the loan of approximately $7,000 at the bank, and sent the remainder to petitioner, who deposited it in her separate bank account. She returned to her home in Seattle in June to prepare for her wedding to Dr. George T. Reeve, which took place in July of 1941. After their marriage petitioner and her husband went to California to live, as they had intended to do, and they were thereafter domiciled in California until the latter part of 1945, when they moved to Seattle. After 1941, the bank loan having been discharged, petitioner's father forwarded the checks received from the partnership to her in California, and she deposited them in her separate account. She bought bonds for an education fund for her children, paid her taxes and, when she and her husband wished to buy something to which she intended to contribute, she would draw a check to her husband and give it to him. She paid approximately one-half the cost of a sail boat, at one time. On some occasions she paid some of the purchase payments on the home which she and her husband occupied, and which he had bought in his own name prior to their marriage. Some time *267 after the tax year involved here, Dr. Reeve transferred title to this home from his name alone to the names of himself and petitioner as joint tenants. The partnership interest is not shown to have been effectively transmuted to community property. Opinion KERN, Judge: The problem here is to determine whether there existed, between petitioner and her husband, an agreement by the terms of which her interest in a limited partnership became community property, so that the income arising therefrom would be taxable in equal shares to petitioner and her husband. Although both the principals to such an agreement testified, an exhaustive examination of the entire record fails to disclose any direct and positive evidence of any agreement on the subject. One series of questions directed to the petitioner by her counsel on this vitally important point, and the answers, in the following language, demonstrates the inadequacy of the evidence: Q. As a result of that[advice by petitioner's father that they hold their property in community] what took place between you and the doctor? Was this before the marriage ceremony or after? A. A few days before the marriage ceremony. Q. After *268 that took place between yourself and the doctor what was done in the matter of community property? A. Everything that we had was to be divided. Q. This conversation took place between you and the doctor while your marriage was in its infancy? A. That is right. Astonishing as it seems, this constitutes the principal credible evidence on the question whether there was an agreement of the kind essential to sustain the petitioner's case. The clearest reference in the record to the subject (and it is far from direct and positive), is made by petitioner's father, C. J. Sebastian, whose testimony in other important respects is so replete with inaccuracies and contradictions that we have been reluctant to rely upon it to any substantial degree. He testified that he advised his daughter before her marriage that her property and that of her husband should be held by them as community property. He also testified that he telephoned the limited partnership and asked that his daughter's interest be shown on its books as being held by her and her husband as community property. There are some references by other witnesses to the property itself, in which it is described as community property, *269 but calling it community can not make it community. [1] While it is neither necessary nor desirable in these cases to adhere with unreasonable strictness to technical requirements, and we are not disposed to require verbatim testimony of an express and formal oral contract of transmutation, it does not seem unreasonable, where the parties depend for their success upon establishing the existence of an agreement, and where both parties are present and testify, to expect some direct and positive evidence that an agreement or understanding of some kind was arrived at, and, in general, the substance thereof. Whether there was here, in fact, any conversation or understanding, and, if so, what it consisted of, facts to which the testimony quoted above was apparently directed, are impossible to determine. In such a case as this, lacking specific evidence of an agreement, we may look to such circumstantial evidence as the later conduct of the parties. See Kaltschmidt v. Weber, 79 Pac. 272. The subsequent actions of the parties *270 relative to the property involved here, and the income derived therefrom, do not constitute circumstantial evidence of the existence of an agreement that the property was to be transmuted to community property. With respect to the partnership interest, it continued to be managed and controlled by petitioner's father, acting under a power of attorney executed by petitioner alone. No other power of attorney was ever executed by petitioner's husband, or by the two of them together. Either petitioner's father, acting in her individual behalf, or petitioner herself, received all the income which was actually received from the partnership operations. That part which petitioner received, she deposited in a separate checking account maintained by her. From the funds deposited there during the tax year and subsequently, she paid her taxes, bought bonds, started an educational fund for her children, and, on certain occasions, she drew a check in favor of her husband and delivered it to him for use in a specific project in which both were interested and to which she wished to contribute. At no time does it appear that her husband ever exercised any management or control over either the property *271 involved, or the income from it. With respect to the husband's property, acquired before the marriage, and therefore separate unless effectively transmuted to community, it consisted of a house in which they lived. It was bought by him in his own name, in which it stood until two or three years after the tax year involved here. At that time it was changed to a joint tenancy, a tenancy which California courts have described as inconsistent with community, both of which can not exist with respect to the same property. See In re Watkins Estate, 104 P. (2) 389. It is well-settled that property, once shown to be separate, is presumed to remain separate until an agreement to transmute it to community is shown. See Mertens Law of Federal Income Taxation, Vol. 3, Sec. 19.14, 41 C. J. S. Sec. 494. State v. Sailor, 30 P. (2d) 397; De Hart v. Allen, 11 P. (2) 342. Such an agreement need not be formal, and may be either oral or written, but its existence must be established by clear and unequivocal evidence. Helvering v. Hickman, 70 Fed. (2d) 985; Frances C. Brooks, 43 B.T.A. 860; Wehe v. McLaughlin, 30 Fed. (2d) 217; *272 Sherman v. Commissioner, 76 Fed. (2d) 810; Commissioner v. Cavanaugh, 125 Fed. (2d) 366; Blair v. Roth, 22 Fed. (2d) 932, certiorari denied 48 Supreme Court 436; or "direct and positive" evidence, Gruye v. Gruye, 115 P. 731; State v. Sailor, supra. See, also, Estate of Joe Crail, 46 B.T.A. 658. Such agreements are, in practice, highly individual; they may provide that the separate property of either or both become community or remain separate; that prior acquired separate property of either or both be separate, but after acquired separate property become community; or, that prior acquired separate property of either or both be community, but that acquired after marriage by either or both remain separate. It is plainly necessary to be advised of the individual characteristics of any contract relied on. Here we are left destitute of adequate evidence, either direct or circumstantial, with which to overcome the presumption above referred to, that this property, having once been shown to have been separate, remains so until the contrary is shown; or, of course, the omnipresent presumption of *273 correctness which attaches to the respondent's determination. We can not, under the facts before us, say that that determination upon this issue is in error. Neither are we able to say, upon the facts before us, that respondent erred in his determination that the entire amount of the liquidating dividend received by petitioner prior to her marriage from the Washington Biological Laboratories, Inc., was income taxable to petitioner in 1941. Petitioner contends that this distribution in the amount of $572.93 constituted a return of capital and was therefore not taxable income in any amount. This distribution was made in liquidation of stock originally issued to the Sebastian-Stuart Fish Co. With no right to do so being shown by the record, C. J. Sebastian caused this stock to be transferred to his daughter, the petitioner, for no consideration. Under these circumstances, petitioner has failed to prove what basis, if any, she had as to this stock. Accordingly, we are compelled to consider the basis as zero. The corporation was organized on September 1, 1940, and was liquidated in June 1941. Consequently, the stock was held less than eighteen months. Therefore, the amount received *274 by petitioner as a distribution in liquidation of the corporation was in full payment of stock as to which her basis was zero and which was held less than eighteen months; and was income taxable to her in full. Decision will be entered for the respondent. Footnotes
1. E.g. Petitioner's husband testified that he told the tax advisor making up the 1941 return that the property involved was community property.↩